YAZOO & M. V. R. Co. *v.* MYRON C. DAVIDSON.

[63 South. 340.]

1. CARRIERS.  *Ejection of passengers.  Intoxication.  Laws* 1910, *chapter* 211.

   Under chapter 211 of the Laws of 1910 providing for the ejection of passengers by the conductor from a passenger train, where such passenger is intoxicated, etc., to justify the conductor in such ejection, it is not necessary that the passenger should be so much under the influence of intoxicating liquors as to be mentally and physically incapable of taking care of himself.

2. SAME.

   The statute was designed not for the protection of the person intoxicated, but of the other passengers on the train, and a person intoxicated to the extent that he is mentally and physically incapable of taking care of himself is very much less liable to annoy and endanger the other passengers than one who is less intoxicated.

APPEAL from the circuit court of Warren county.

HON. H. C. MOUNGER, Judge.

Suit by Myron C. Davidson against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

This is an appeal from a judgment for two thousand dollars against the appellant for damages for ejection of appellee from a passenger train of appellant.

Chapter 211, Laws 1910, provides as follows: "If any person be guilty of disorderly conduct or intoxication, or a breach of the peace, or use any obscene, profane or vulgar language, or play any game of cards or other game of chance for money or other thing of value, or sell or offer for sale a lottery ticket, upon any passenger train, the conductor of the train may stop it at the place where the offense is committed, or at the next stopping place of the train, and eject such passenger, using only such force as may be necessary to accomplish the removal, and the conductor may command the assistance of the employees of the company and the passengers on the train to assist in the removal, and the conductor may cause any person violating the law to be detained and delivered to the proper authorities."

On the trial the plaintiff was granted the following instruction, over the objection of the railroad company, which is assigned as error: "(3) The court instructs the jury that if they believe from the evidence that the plaintiff, when he went aboard the train of the defendant company, was not intoxicated to such an extent as to be mentally and physically incapable of taking care of himself, and that his presence on the coach and his conduct was in no way hurtful or annoying to his fellow passengers or to the defendant company, and was doing at the time nothing that would warrant his ejection from the coach of the defendant company, even though he had been drinking, then the defendant servant and agent was not warranted in ejecting or refusing to carry the plaintiff

as a passenger on account of his having taken some drinks, nor was the defendant, or its servant and agent, warranted in having the plaintiff arrested and incarcerated, unless the jury further believe from the evidence that the plaintiff at the time of the arrest was in what is known as the 'negro coach' and refused to leave same, or was breaching the peace.''

*Mayes & Mayes,* for appellant.

The first point which we will submit was the action of the court below in giving the third instruction for the plaintiff. That instruction is as follows: ''The court instructs the jury that if they believe from the evidence that the plaintiff when he went aboard the train of the defendant company, was not intoxicated to such an extent as to be mentally and physically incapable of taking care of himself, and that his presence on the coach and his conduct was in no way hurtful or annoying to his fellow passengers or to the defendant company and was doing, at the time, nothing that would warrant his ejection from the coach of the defendant company, even though he had been drinking, then the defendant's servant and agent was not warranted in ejecting or refusing to carry the plaintiff as a passenger on account of his having taken some drinks, nor was the defendant, its servant and agent warranted in having the plaintiff arrested and incarcerated unless the jury further believes from the evidence that the plaintiff at the time of the arrest was in what is known as the 'negro coach' and refused to leave same, or was breaching the peace.''

The court will bear in mind that this transaction occurred on the 24th of December, 1910. Which being true, then the instruction as given was directly in the teeth of the statute of this state, enacted April 11, 1910, being chapter 211 of the Laws of 1910. By that statute the Code section 4063 was so amended as to make the same apply to all persons, and so as to add intoxication to

the offenses embraced in the said section, the only provi-
sion of that amendment was to insert in the said statute as
it was previously written, the words, "or intoxication."
The statute had no other purpose.- And this court will
observe that the statute did not say, nor did it mean, that
this new offense, which was by law .declared to be suffi-
cient to cause the exclusion of a passenger from the train,
was "intoxication to such an extent as to be mentally and
physically incapable of taking care of himself." The
judge, in giving the instruction, had no right or power so
to qualify the word "intoxication." That is not what
the statute says or means. The statute, in the most posi-
tive and explicit way, makes the bare fact of intoxication
ground for putting a man off the train. And this legisla-
tion is simply a feature in the prevailing pubilc policy of
the state, which at that time was being more and more
intensely urged, to wit, the discouragement and suppres-
sion of the prevalent practice of using intoxicating liq-
uors..

There is every reason why it should be, and is true
that this word "intoxication," as used in the statute,
should not be qualified and modified by a holding on the
part of the judge that it means intoxication to the point
that a man is physically and mentally incapable of tak-
ing care of himself. The man is not put off the train for
his own help and protection. He is put off the train, man-
ifestly, because he is a menace and a danger to the good
order and safety of the train. Everybody knows that if a
man is so drunk that he is mentally and physically incapa-
ble of taking care of himself, he is-not dangerous. He
may be disgusting, and frequently is, to an intense de-
gree; but he is not dangerous. The dangerous man is the
intoxicated man who is capable of taking care of him-
self. The trouble about it is that they often take care
of themselves when there is no necessity for taking care
of themselves. They are always picking quarrels with
people, and shooting up people, with no provocation what-

ever, but only the fancy of the drunken man. It has come within the observation of every traveler on our trains that the greatest nuisance to be encountered, and one of the most serious dangers to be met is the drunken fellow on the cars, who is perfectly able to walk, and perfectly able to talk, but whose inflamed imagination leads him to conceive that a part of his trip is to make a row. They are a common feature of our public travel, and the legislature, in its wisdom, saw proper to provide that the bare fact of intoxication on the train should be ground, in the discretion of the conductor, for his exclusion from the train. The statute not only so provides, but the statute also expressly provides that the conductor may turn him over to the authorities, just what this conductor did do. See the final clause in the statute.

*Henry & Canizaro,* for appellee.

The purpose of appellee's third instruction is simply to advise the jury what was meant by the word intoxication; it tells the jury that it does not mean that simply because a person has taken one or two drinks that for that reason he is necessarily intoxicated.

We cannot conceive that the legislature when it enacted Chapter 211, Laws of 1910, intended to prohibit the trial judges from explaining to the jury through instructions, what intoxication is within the meaning of the law.

How could that instruction have misled the jury? It tells them that if the plaintiff was not intoxicated to such an extent as to be mentally and physically incapable of taking care of himself, and was not breaching the peace, and was doing nothing that would warrant his ejection from the coach of defendant company, even though he had been drinking, the railroad company could not refuse to carry him on account of his having taken some drinks.

The instruction in substance tells the jury that merely taking a drink is not sufficient to warrant the ejection but the passenger must be intoxicated, which means he must

be in such condition mentally and physically, as to incapacitate him from taking care of himself.  It would be an unusual condition of affairs if the railroad company could arrest and eject a passenger because he had taken one or two drinks, and then say he was intoxicated and not permit the jury to learn or know what the law means by the word "intoxication" in order that they may pass on the proposition.

The fourth volume of Words and Phrases at page 3734 defined "intoxication" as follows:  "Under the law, a man is intoxicated whenever he is so much under the influence of spirituous or intoxicating liquors, that, it so operates on him, that it so affects his acts or conduct or movements that the public or parties coming in contact with him can readily see and know that it was, affecting him in that respect."

And at page 3735 same volume it says:  "An instruction in a personal injury case, in which contributory negligence of the defendant arises from his intoxication, was urged as defense, that the word intoxicated meant such a condition that defendant was incapable of giving attention to what he was doing as a man of prudent and reasonable intelligence would give, was thought to be proper."  *Kenny* v. *Rhinelander,* 50 N. Y. Supp. 1088 and 1090, 28 App. Div. 246.  There are other definitions in Words and Phrases, *supra,* but we will not undertake to burden this brief with them.

The word intoxication is like any other word in the English language, there is nothing peculiar about it, it is not a new word, it has had a meaning in all of the statutes heretofore enacted, it had a meaning in all the codes written before the passage of the prohibition law and as late as our last Mississippi Code 1906, in the dramshop section which was virtually repealed by the laws of 1906. The words intoxicating liquors, intoxication and intoxicated, are variously used so that there can be no doubt as to its full intendment and meaning.

106 Miss. 8

From Webster's Unabridged Dictionary we find, intoxication to be synonymous to drunkenness, inebriation, inebriate, delirium, see drunkenness, and Webster defines the word intoxication as "a poisoning as spirituous or a narcotic substance." The Century Dictionary defines intoxication as poison, poisoning, the state produced by drinking too much of an alcoholic liquid or opium," etc.

So we say the meaning of the word intoxication as employed in the law of 1910 has no extrajudicial meaning but is an addition to section 4063 of Mississippi Code 1906, to which the attention of this honorable court is invited and it will be observed that the word "intoxication" is added to section 4063 and could mean nothing more nor less than it did under any of the other sections of this code, or any other code.

The Law of 1910 employing the word "intoxication" does not define the word and say what intoxication means. We then are forced to use our understanding of the English language as we are taught it and given it by our best writers and from decisions of the court. As the immortal Bobbie Burns says, "A man may drink and not be drunk," which fact most of us will verify.

The defense being that he was drunk, would require more than a statement of that fact, in addition thereto, would require proof that he not only drank, but other proof that he was poisoned by the use of intoxicating liquor, generally understood to mean, the over indulgence in intoxicating liquor.

SMITH, C. J., delivered the opinion of the court.

This suit was instituted by appellee to recover of appellant damages for wrongfully ejecting him from one of its trains while a passenger thereon, and causing him to be arrested and imprisoned. Appellee's defense was that appellant was drunk and disorderly, and that his ejection and arrest was authorized by chapter 211, Laws of 1910.

The court committed fatal error in granting appellee's third instruction. In order for a person to be intoxicated, it is not necessary for him to be so much under the influence of intoxicating liquor as to be mentally and physically incapable of taking care of himself. Chapter 211, Laws of 1910, was designed, not for the protection of the person intoxicated, but of the other passengers on the train, and a person intoxicated to the extent that he is mentally and physically incapable of taking care of himself is very much less liable to annoy and endanger the other passengers than one who is intoxicated in a very much less degree.

*Reversed and remanded.*