THE STATE v. HORACE GRIFFIN, Appellant.—6 S. W. (2d) 866.

Division Two, May 25, 1928.

*H. K. Bente* and *C. I. Bennington* for appellant.

*North T. Gentry,* Attorney-General, and *Walter E. Sloat,* Special Assistant Attorney-General, for respondent.

HENWOOD, C.—An information was filed in the Circuit Court of Lafayette County by which appellant was charged with operating

a motor vehicle while in an intoxicated condition. The venue was changed to the Circuit Court of Pettis County, where he was tried and convicted. In accordance with the verdict of the jury, he was sentenced to imprisonment in the penitentiary for three years, and appealed.

It appears from the evidence produced by the State that, about four o'clock on Sunday afternoon, June 6, 1926, appellant and Harris Kemper and Miss Frances Crowley drove into the garage of Charles Kufel in Lexington, Missouri, in a big Hudson touring automobile and had some adjustment made on the engine of the car. Kufel, the garage keeper, testified that he did not notice which one of the men was driving the car, but both of them were in an intoxicated condition; that "they acted like it; like any drunken man acts; just like any man does when he gets drunk; they had a happy feeling." Later in the afternoon, between five and six o'clock, when it was reported to Mike Connors, deputy marshal of Lexington, that a Hudson car had collided with a Nash car, driven by a Mr. Cunningham. Connors got in the Nash car with Cunningham and started in pursuit of the Hudson car, on Highway No. 20, and in a westerly direction from Lexington. They overtook the Hudson car about three miles west of Lexington, running between forty and fifty miles per hour, with appellant driving and Kemper and Miss Crowley in the front seat with him. When Cunningham drove the Nash car along the side of the Hudson car, Connors commanded appellant "to stop, to consider himself under arrest." Appellant replied, "Oh, go to Hell," and increased the speed of the Hudson car sufficiently to leave the Nash car far in the rear. Shortly thereafter, and about four or five miles west of Lexington, in Lafayette County, appellant attempted to pass a Ford car, going in the same direction (west) and around a curve, at a low rate of speed, and in avoiding a collision with a Dodge sedan, coming from the west, he drove the Hudson, at the rate of fifty miles per hour, into the rear of the Ford car, causing both cars to slide down an embankment and turn over on the right side of the highway. There were two men, two women and three small children in the Ford car. "They were all badly bruised and cut up." One of the small children was "hurt badly." No apparent injuries were suffered by appellant or his companions in the Hudson car. Within a few minutes, Connors and Cunningham reached the scene of the accident in the Nash car, and assisted in removing the occupants from both of the wrecked cars. When told again, by Connors, to consider himself under arrest, appellant started "fighting and cussing and kicking" Connors, and said to Connors: "I put one man from your town in the river and G— D— you, I will put you there inside of six months." Connors struck appellant with his pistol, and in the general mixup that followed, and while Connors

was arranging to take Kemper and Miss Crowley back to Lexington, under arrest, appellant escaped, but was arrested later that evening by the sheriff (C. F. Frick) in the home of his uncle, about one mile from the point where the accident occurred. Connors testified that appellant and Kemper and Miss Crowley "were all three drunk," and that appellant "was crazy drunken mad." Other witnesses for the State, including H. E. Newton, driver of the Dodge sedan, and John Beggs and John Ratcliffe, who were in the Ford car, corroborated Connors as to appellant's conduct, and said that appellant and Kemper and Miss Crowley were intoxicated. Newton, Beggs and Ratcliffe said they smelled liquor on appellant's breath, and Newton said "it smelled like whiskey." Beggs further said that "once he (appellant) reached back in the car to get a gun and told him (Connors) he would kill him." Ratcliffe said appellant and Kemper were "staggering around" after the accident. Frick, the sheriff, testified that appellant was "intoxicated" when he arrested him, about one hour after the accident.

Appellant took the stand and testified at length in his own behalf. He said that, on the Sunday afternoon in question, he drove from Richmond to Lexington with Kemper and Miss Crowley in a Hudson car, but was not with them when they took the car to the garage; that he joined them again, when they started west out of Lexington, and Kemper drove the car through the city limits and "about a mile west of Myrick," where he (appellant) began driving; that he started around the Ford car on "a pretty sharp curve" and ran into the rear of the Ford car, in getting out of the way of the Dodge sedan which was approaching from the opposite direction; that he was driving "not over thirty-five miles an hour," when he struck the Ford car; that he was "perfectly sober," and had not had a drink of any intoxicating liquor during that day; that he kicked Connors and tried to get away, when Connors undertook to arrest him, because Connors had no warrant for his arrest, and because he "was hurt" and "couldn't stand to be jerked around." It was also developed, on his direct examination, that, when Kemper was driving the car on Cliffe Drive in Lexington, the fenders on their car struck the fenders on another car, and that they did not stop, because no damage was done and they did not think it was necessary to stop. On cross-examination, he admitted that he had been convicted in Richmond, for carrying concealed weapons and for assault, and in Lexington for assault.

Kemper's testimony was substantially the same as appellant's in all particulars. Among other things, he said that he and Miss Crowley were sober and had not been drinking intoxicants on the day of the accident.

294

Mrs. Claude Driskell, appellant's aunt by marriage, testified that appellant was sober when he came to her home, immediately after the accident.

I. It is contended that the evidence is insufficient on the issue of intoxication. We find no merit in this contention. Six reputable witnesses, including the deputy marshal of Lexington and the sheriff of the county, testified that appellant was in an intoxicated condition. Three of these witnesses smelled liquor on his breath, and one of them said "it smelled like whiskey." His reckless handling of a high-powered automobile, at a high rate of speed, on a public highway, and his bold defiance of an officer of the law, furnish strong support for the opinions expressed by all of these witnesses. He displayed a "happy feeling" at the garage. He was "crazy drunken mad" when the wreck and the arresting arm of the law interfered with his joy ride. And finally, he was "staggering around" when the hour of reckoning arrived. Such exhibitions are typical of the different stages of intoxication and of the actions of an intoxicated person under different circumstances. This is a matter of common knowledge, among laymen as well as experts. And this court has repeatedly held that the fact of intoxication may be shown by evidence of this character. [State v. Reifsteck, 295 S. W. 741; State v. Fitzpatrick, 267 S. W. 905; State v. Hatcher, 259 S. W. 467.] The evidence, as a whole, is abundantly sufficient to sustain this conviction, and there is no foundation in the record for the charge that the jury was moved by passion and prejudice. Manifestly, the jury was impressed with the gravity of appellant's conduct, and, for that reason, assessed a heavy punishment against him. While the matter of assessing punishment for crime is left to the jury and the trial court, within the limits prescribed by the statutes, we have no hesitancy in saying that the action of the jury was fully warranted by the facts in this case.

II. The complaint is made, in the motion for a new trial, "that the court erred in permitting the State to introduce testimony showing that defendant was charged with two other distinct and separate offenses in cases numbers 15912 and 15914." We find no such testimony in the record. This complaint will, therefore, be disregarded.

III. Instruction No. 4 is attacked on the ground that it misdirected the jury as to the range of punishment for the offense

charged. The statute provides that any person who is found guilty of this offense "shall be punished by imprisonment in the penitentiary for a term *not exceeding five years* or by confinement in the county jail for a term not exceeding one year, or by a fine not exceeding one hundred dollars ($100) or by both such fine and imprisonment." [Sec. 27 (g) and Sec. 29 (c), Laws 1921 (1st Ex. Sess.), pp. 103 and 105. Italics ours.] This instruction directed the jury, if they found the defendant guilty, to "assess his punishment at imprisonment in the State Penitentiary for a term *not less than two nor more than five years,* or by imprisonment in the county jail not more than one year, or by a fine of not more than one hundred dollars or both such fine and imprisonment." (Italics ours.) Section 3698, Revised Statutes 1919, says that "no person shall in any case be sentenced to imprisonment in the penitentiary for any term less than *two years.*" (Italics ours.) It follows that no error was committed by the court in instructing the jury as to the *minimum imprisonment* in the penitentiary, even though the statute in question does not expressly refer thereto. [State v. Scholl, 130 Mo. 396, 32 S. W. 968.]

IV. Other assignments of error relating to the admission and exclusion of evidence and to instructions given to the jury are general in character and do not specify the matters complained of. Such assignments present nothing for review on appeal. [New Sec. 4079, Laws 1925, p. 198; State v. Murrell, 289 S. W. 859; State v. Standifer, 289 S. W. 856.]

V. It is also contended that the jury was prejudiced against appellant by certain remarks of counsel for the State, made in the argument of the case. The motion for a new trial contains the following assignments of error in this connection:

"6. That the court erred in not reprimanding the Prosecuting Attorney, E. W. Couey, and discharging the jury when said Prosecuting Attorney made the statement to the jury to the effect 'that the Legislature should pass a law making a man guilty of driving an automobile while intoxicated, like the defendant, was guilty of, murder,' or words to that effect and in further stating to the jury in substance 'to convict this defendant, or this man as I want my family to be safe when driving upon a public highway.'

"7. That the court erred in refusing to reprimand the Prosecuting Attorney of Lafayette County, Mr. Skelton, and in not discharging the jury when said Prosecuting Attorney in arguing said case to the jury made the following remarks: 'That he wanted this de-

fendant convicted so that it will be the sixth conviction against his record,' and in making the further statement in his argument to the jury, all over the objections of the defendant, to-wit: (Mr. Skelton): 'I say to you, gentlemen of the jury, without fear of contradiction, that any man who goes on our highway and drives a car at a furious rate of speed, in an intoxicated condition, is a potential murderer.' And in making other detrimental remarks tending to prejudice the jury against defendant.''

The record shows that when these remarks were objected to, the court cautioned counsel for the State to ''stay in the record,'' the remarks were withdrawn, and counsel for appellant requested no further action on the part of the court. While some of the remarks complained of were improper, they could hardly be said to have left any prejudicial effect on the jury, after being withdrawn. Whether or not improper remarks of counsel, in addressing the jury, are sufficiently prejudicial to constitute reversible error is a question which must, in each particular case, be considered in connection with the nature of the offense charged, the facts and circumstances in evidence, and all of the incidents of the trial, including the argument and general conduct of defending counsel. [State v. Harmon, 296 S. W. l. c. 400, and cases cited.] In this instance, we do not think that the objectionable remarks were of such a character as to have justified the trial court in discharging the jury; nor were they such, in our opinion, as to justify this court in reversing the judgment.

The information and the verdict are both sufficient in form and substance. No reversible error appearing in the record, the judgment is affirmed. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.