[Civ. No. 5221.   Third Appellate District.—December 15, 1934.]

STELLA TRACY, Respondent, v. NETTIE BRECHT et al.,
Appellants.

106

Inman & West for Appellants.

John M. Welsh and Butler, Van Dyke & Harris for Respondent.

PLUMMER, J.—The plaintiff had judgment against the defendants in the sum of $6,500, for and on account of personal injuries, hospitalization expenses and doctors' fees, suffered and necessitated by reason of a certain automobile collision between a car driven by the defendant, Nettie Brecht, in which the plaintiff was riding as a guest, and an automobile driven by a Mr. McCuen. From this judgment the defendants appeal.

The complaint, after alleging the existence of certain public highways and streets in the city of Sacramento, the

fact of the defendant, Nettie Brecht, being the driver of a Hudson sedan automobile in which the plaintiff was riding as a guest, and setting forth the fact of the collision to which we have referred as occurring on the twenty-sixth day of September, 1933, at about the hour of 3 P. M. of said day, contains the following:

"That at said time and place said defendant, Nettie Brecht, was then and there driving and operating said automobile while under the influence of intoxicating liquors, and while in an intoxicated condition; that as said automobile in which plaintiff was riding, as aforesaid, and which was then and there being driven and operated by defendant, Nettie Brecht, as aforesaid, did approach and traverse the said intersection of 5th Avenue with 32nd Street, as aforesaid, said defendant, as a direct and proximate result of her said intoxicated condition, did so unlawfully and recklessly drive and operate said automobile as to cause the same to, and the same did, solely by reason thereof, strike and violently collide with a certain Studebaker automobile then and there proceeding southerly through said intersection, on 32nd Street."

As a second cause of action the plaintiff alleges wilful misconduct on the part of the defendant, Nettie Brecht, in the driving of said automobile. The complaint further alleges that the intoxicated condition of the defendant, Nettie Brecht, was the direct and proximate cause of the collision just referred to. The injuries to the plaintiff resulting from the collision are then set forth in detail.

As grounds for appeal the defendants urge that the testimony is insufficient to show that the defendant, Nettie Brecht, was intoxicated; that the findings are not supported by the evidence; that other parties should have been brought into the action; that the court erred in the admission of evidence; and that the damages awarded are excessive.

Without mentioning the various places at which the liquor imbibed by the defendant, Nettie Brecht, preceding the collision, was obtained, it is sufficient to state generally that the defendant, Nettie Brecht, had seven drinks; first, a bottle of home-brew, two drinks of whisky, three gin-fizzes, and finally a drink of whisky described as "terrible stuff". We may here state that none of these drinks were taken in the presence of the plaintiff. After having had six of the drinks

mentioned, the defendant, Nettie Brecht, accompanied by two other persons, drove her automobile to the residence of the plaintiff and invited the plaintiff to accompany the party, apparently for the purpose of going some place to have a dinner and then to the theater. This purpose was not very definitely explained.

After taking the last drink of whisky, the testimony shows the conduct of the defendant, Nettie Brecht, in driving the automobile. It appears that the automobile was driven for a number of blocks on a street in the city of Sacramento known as Franklin Boulevard. This boulevard is intersected by 5th Avenue. Franklin Boulevard, in its general course, is northerly and southerly. Fifth Avenue in its general course is easterly and westerly. Paralleling Franklin Boulevard is a certain other street known as 32nd Street. The Hudson sedan was driven for a number of blocks on Franklin Boulevard, turned into 5th Avenue, and came into collision with an automobile driven by a man named McCuen at the intersection of 5th Avenue with 32nd Street.

The testimony is to the effect that the defendant, Nettie Brecht, drove the Hudson sedan on Franklin Boulevard very rapidly, from 40 to 45 miles an hour; as one witness explained, between 40 and 50 miles per hour; that in driving the car the defendant, Nettie Brecht, would pull in behind cars, pull out fast, pull in behind cars again, slap on her brakes; came close to hitting a school bus in passing some cars; was asked to slow down; refused to do so, but continued to swerve out and back again in trying to pass more cars. This continued for a number of blocks. While driving on Franklin Boulevard a car driven by an acquaintance passed Mrs. Brecht, whereupon Mrs. Brecht stated that she was going to "catch it", and thereafter continued to drive rapidly until the time of the collision. The plaintiff in the action requested permission to take the wheel. Other passengers begged Mrs. Brecht to stop. The defendant, Mrs. Brecht, refused to allow the plaintiff to take the wheel, declaring that she was all right. In turning into 5th Avenue the car was driven at a speed of about 25 miles per hour, making a sweeping turn. After entering 5th Avenue the car was driven from 40 to 45 miles per hour. On Franklin Boulevard, and also on 32nd Street where it was intersected by 5th Avenue, school children were passing to and fro. On

reaching the intersection of 5th Avenue with 32nd Street, instead of slowing down she swerved her car to the right in order to avoid striking the McCuen car which was being driven in a southerly direction. The Hudson car was then being driven in an easterly direction. The sweep of the Hudson car in swinging in front of the McCuen car was not sufficiently wide, and the left rear wheel of the Hudson sedan was caught by the left front wheel or front portion of the McCuen car and upset, resulting in quite serious injuries to the plaintiff, as alleged herein. The testimony is to the effect that no attempt was made by the defendant, Nettie Brecht, to check the speed of the car in entering 32nd Street; no application was made of the brakes; and one witness testifying that the Hudson sedan at that instant was being driven between 40 and 50 miles an hour. One of the witnesses gave a higher speed than 35 miles an hour as the car was being turned from Franklin Boulevard into 5th Avenue. There is no controversy as to the drinks taken by the defendant, Nettie Brecht.

The testimony is also to the effect that the defendant, Nettie Brecht, after the collision, was in a very excited condition, and objected to being taken to the emergency hospital. The testimony also shows that at the time the Hudson sedan was being driven on Franklin Boulevard, the traffic was very heavy. We quote from the testimony of one witness as follows: ''Q. Now, will you please describe to the court the way that Mrs. Brecht drove that car for that period, approximately twenty blocks? A. Awfully fast. She would pull in behind a car and then pull out again to pass, and when she was unable to make it, put on her brakes and pull back in again behind the other cars. There was a school bus coming along, or a P. G. & E. bus; she nearly hit that in trying to pass some cars. We asked her to not go so fast, to slow down; but it did not seem to make any difference, and even then, she would do it all over again; she would swerve back again and try to pass more cars. Q. Now, when did she start to do that? A. After we had gone about three blocks on Franklin Boulevard. Q. What happened at that time? A. A car had passed us and Mrs. Brecht became terribly excited over it, and she said, 'I am going to catch that car'; and from then on she started driving fast, and she continued to drive fast up to the time

of the accident. Q. Now, then, during this interval of 18 or 20 blocks when she was driving northerly on Franklin Boulevard, and swerving in and out of the traffic, what were you girls in the car doing? A. Begging her to stop.''

The testimony also is to the effect that Mrs. Brecht was told to look out for the children, but that did not cause her to slacken the speed of the car that she was driving.

As controverting the testimony tending to show intoxication, the defendants introduced the testimony of two physicians and a police officer, to the effect that Nettie Brecht was not intoxicated. One of the physicians treated Mrs. Brecht approximately a half hour after the collision. Just how long it was after the collision the second physician had an interview with Mrs. Brecht has not been called to our attention, but we assume it was within a reasonable time.

The objection of the defendants to the admission of testimony showing the manner in which the defendant, Nettie Brecht, drove the Hudson sedan on Franklin Boulevard seems to us clearly untenable. In *Hasten v. State,* 35 Ariz. 427 [280 Pac. 670], the court, having before it the cause of a defendant convicted of driving an automobile while under the influence of liquor, said: ''There are three assignments of error. The first raises the question of the admissibility of certain evidence as to the speed at which appellant was driving when arrested. It is urged that the speed of the car has no connection with the particular offense charged. We cannot agree with this contention. It is a notorious fact that one of the first things a driver under the influence of liquor is apt to do is to drive at a high rate of speed, especially when an advanced state of intoxication has not yet been reached. Such being the case, the speed at which appellant was driving was one of the circumstances which the jury might properly consider in determining whether he was under the influence of liquor at the time.''

That one has a collision on the highway may also be introduced to show that the driver of the car was intoxicated, as his manner of handling the car might be most pertinent. (*Thomas v. State,* 109 Tex. Cr. Rep. 207 [3 S. W. (2d) 807].) Likewise, evidence of the acts and conduct of a person at the time of the alleged violation of a statute prohibiting the driving of an automobile while intoxicated, is admissible.

(*Stewart* v. *State,* 108 Tex. Cr. Rep. 199 [299 S. W. 646].)
See, also, *State* v. *Griffin,* 320 Mo. 288 [6 S. W. (2d) 866].

Without lengthening this opinion by citation of authorities, we may call attention to the notes in 68 A. L. R. beginning on page 362, also notes in 49 A. L. R. beginning on page 1395. Also, to the notes in 42 A. L. R. beginning on page 1506. The cases collected in the notes show that testimony as to the number of drinks of intoxicating liquor taken by the person involved, and his acts and conduct from the beginning of the drinking until the collision of the cars, may be introduced in evidence, and taken into consideration for the purpose of determining whether the one involved was or was not driving an automobile while in an intoxicated condition. Also, as to whether the person involved was only under what is called the "influence of intoxicating liquor".

■ The principal contention of the appellants is that the act of Nettie Brecht at most comes only under the prohibiting provisions of section 112 of the California Vehicle Act, and not under the provisions of section 141¾ of the same act, permitting recovery for injuries suffered by a guest resulting from the intoxication or wilful misconduct of the driver of the automobile in which the guest is riding.

We do not question that the decisions in many states, as in California, draw a distinction, or a line of demarkation between the terms "under the influence of intoxicating liquor" and "intoxication". Likewise, we agree with the appellants that section 112 of the California Vehicle Act has for its purpose the protection of the general public, and that section 141¾ of the act has for its purpose the protection of an automobile driver from unwarranted claims made by guests. This distinction alone, however, is insufficient to absolve the driver of an automobile from liability if the quantity of liquor consumed, and under the influence of which he is laboring is sufficient to produce a state of intoxication described in section 933 of "Wigmore's Work on Evidence", to wit: "Intoxication, if it is of such a degree as to deserve the name, involves a numbing of the faculties so as to affect the capacity to observe, to recollect or to communicate."

A further definition of what is meant by "intoxication" may be found in 33 California Jurisprudence, page 479, note 32, as follows: "There are degrees of intoxication vary-

ing all the way from slight stimulation to complete coma. It is only at some point along the line between the two extremes that the loss of control of the mental faculties occurs. (*State* v. *Yates,* 132 Iowa, 475 [109 N. W. 1005].) In order for a person to be intoxicated, it is not necessary for him to be so much under the influence of intoxicating liquor as to be mentally and physically incapable of taking care of himself. (*Yazoo & M. V. R. Co.* v. *Davidson,* 106 Miss. 108 [63 So. 340].)''

Practically all of the cases called to our attention have had to deal with the question of whether the person involved was under the influence of intoxicating liquor, and not whether the person was intoxicated. However, the language of the court in the case of *People* v. *Dingle,* 56 Cal. App. 445 [205 Pac. 705], relied upon by the appellants, where the court instructed the jury as to what constituted being under the influence of intoxicating liquor, is as follows: ''The statute does not say that no person shall operate or drive a motor vehicle on the public highway while intoxicated, but that no person shall operate or drive such a vehicle on the public highway while under the influence of intoxicating liquor. The instruction, therefore, very properly does not undertake to define intoxication, but does state what acts and what condition will justify a finding that the accused is under the influence of intoxicating liquor within the meaning of the statute. It is probably true, however, that the phrase 'under the influence of intoxicating liquor' is substantially, and to all practical intents and purposes, synonymous with such words as 'intoxication' and 'drunkenness'. But even so, the instruction gives a good definition of 'intoxication'. In *St. Louis etc. Ry. Co.* v. *Waters,* 105 Ark. 619 [152 S. W. 137], the Arkansas Supreme Court defined 'intoxication' or 'drunkenness' substantially in accord with the definition given in this instruction. In that case the court said: 'A man may be said to be drunk whenever he is under the influence of intoxicating liquor' to the extent that they affect his acts or conduct so that persons coming in contact with him could readily see and know that the intoxicating liquors were affecting him in that respect.''

■ In nearly all of the definitions which have come under observation as to whether one is under the influence of intoxicating liquor, or is intoxicated, the question is

whether the person involved is so far under the influence of intoxicating liquor, or has reached such a degree of intoxication that his ability to operate a car in the manner that an ordinarily prudent and cautious person in full possession of his faculties, using reasonable care, would operate or drive a similar vehicle under like conditions. If the faculties of the person involved are so far affected, stimulated or stupefied that he is not able to appreciate the hazard involved by the manner in which the automobile is being driven, or the imminent dangers arising from cutting in and out, fast driving and quick stopping, on a street where the traffic is heavy and school children are passing to and fro, the conclusion that such a person is so far under the influence of intoxicating liquor as to have reached a degree of intoxication required by section 141¾ of the California Vehicle Act, is sufficiently supported.

In *Lockhart* v. *State,* 108 Tex. Cr. Rep. 597 [1 S. W. (2d) 894], an instruction to the effect that a person was intoxicated where a sufficient quantity of intoxicating liquor had been taken into the stomach to deprive him of normal control, was upheld.

In *State* v. *Graham,* 176 Minn. 164 [222 N. W. 909], in dealing with the question of the influence of intoxicating liquor, it is said: "When a person is so affected by intoxicating liquor as not to possess that clearness of intellect and control of himself that he otherwise would have, he is under the influence of intoxicating liquor within the meaning of that term as used in the statute prohibiting the operation of vehicles while in such condition."

In *Daniels* v. *State,* 155 Tenn. 549 [296 S. W. 20], the court said: "The phrases 'under the influence of an intoxicant', and 'while in a drunken, or partly drunken condition' mean substantially the same thing, and are used synonymously in the statute."

The appellants call our attention to the case of *Tomlinson* v. *Kiramidjian,* 133 Cal. App. 418 [24 Pac. (2d) 559], where the court said: "From evidence that a person had been drinking intoxicating liquor, and thereafter drives his car in a negligent manner, it does not follow as a matter of law that he was driving while under the influence of intoxicating liquor." We readily agree with this statement but an examination of this case shows that testimony was

admitted very similar to the testimony in this case as to the manner in which the defendant was driving his car. It also appears from the opinion that the jury found in favor of the plaintiff, and the action of the trial court in setting aside the verdict and directing judgment be entered for the defendant, was reversed by the appellate court.

■ In this case, just as in the case which we have been considering, it was for the trial court to determine the degree of intoxication under which the defendant, Nettie Brecht, was laboring at the time of driving the car on Franklin Boulevard and 5th Avenue, and at the instant of the collision. The court found as follows: ''That it is true that at said time and place said defendant, Nettie Brecht, was then and there driving and operating said automobile while under the influence of intoxicating liquor and while in an intoxicated condition'', etc.

The finding is not ambiguous. The defendant, Nettie Brecht, could not be intoxicated to any degree without also being under the influence of intoxicating liquor. As to whether the witnesses testifying for the plaintiff, detailing the number and kind of drinks which the defendant, Nettie Brecht, had imbibed, and her manner of driving the car on the respective streets, and her actions after the collision, satisfied the court that she was driving her car while in an intoxicated condition, was a question of fact for the court to determine, and as the court so found from the facts and circumstances set forth in the transcript and summarized herein, we are bound by such finding even though two physicians and a police officer testified that in their opinion Nettie Brecht was not intoxicated. The record contains no explanation of what degree of influence produced by intoxicating liquors must be observed before creating what such witnesses would call ''an intoxicated condition''. The decision of the trial court, with all the circumstances and conditions before it, is not only more persuasive as to its correctness than the opinions of three witnesses who failed to observe that the defendant, Nettie Brecht, was in what they would call ''an intoxicated condition'', but also precludes this court from holding the contrary.

■ The appellants further urge that F. N. McCuen, the driver of the car with which the car driven by the defendant, Nettie Brecht, came in collision, should have been

brought into the action. There is no merit in this contention. If it be assumed that both McCuen and Nettie Brecht were tort-feasors, the plaintiff would still have the privilege of electing to bring suit against one of them, and not as against both. This cause of action, however, is different from one against tort-feasors, where a plaintiff may very properly bring in two or more defendants. The action in the instant case involves the question of the intoxication of the defendant, Nettie Brecht, and not simply her negligence. The action against McCuen, so far as the record discloses,. would have been against him only on the ground of negligence.

The cases cited by the appellants show, and it is not disputed, that where the action of two or more persons united in producing an injury, all of such persons may properly be brought in as defendants, but even under such circumstances, the joining of all of the persons guilty of negligence is not necessary as the plaintiff may still elect to institute suit against one only. This is for the reason that one is not relieved of his own wrong by reason of others being also guilty of a like wrong.

█ It is finally contended that the damages awarded are excessive. The hospital expenses, doctors' fees, etc., amounted to the sum of $650. The remainder of the award was allowed on account of personal injuries. The injuries suffered by the plaintiff are clearly set down in the respondent's brief, which we have verified by an examination of the record, and for convenience, incorporated the same herein, to wit: "When the car turned on its side her arm stuck out and was caught between the pavement and the car, the car skidding along with her arm in that position; that her knuckles were cut off, leaving a scar, her forehead cut, her eye blackened, and one arm broken; that her legs and back were bruised so that she was unable to walk; that after she left the hospital she was able to walk a little, but not very good, and that her injuries still bothered her when she bent over; that the pain still persisted; that since the injury her nerves had been unsettled; that she could not drive a car in traffic, and so when she reached the boulevard she had to take a street car and leave her car there; that Dr. Binkley at first attempted to set her arm, and she was then taken to Dr. Anderson, who attempted it, and that she

ultimately went to Dr. Fabian; that he had to reduce the swelling and prepare the skin, which took a week, and that her arm had to be dressed once or twice a day for the burns, which were very painful; that after a week an open reduction was performed, under anaesthetic, and a cast placed on her arm for about three weeks; that she still had not the full use of her arm, and sometimes was not able to hold anything she attempted to pick up; that she could lift things one way, but seemed to lack the strength to exert force in other directions; that sometimes her arm seemed to come unjointed in the elbow, and she would have to work it back and forth to get it back again.''

This summary shows that we cannot hold the judgment excessive.

The count in the complaint based upon wilful misconduct having been dismissed, even though the record may show sufficient to justify a finding supporting such a count, we are not under the necessity of reviewing the testimony in the light of that count.

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 11, 1935.