STATE v. JAMES BRYANT, Appellant.—No. 40106.—205 S. W. (2d) 732.

Division Two, November 10, 1947.

1224

*Charles A. Moon* for appellant.

*J. E. Taylor*, Attorney General, and *Wm. C. Cockrill*, Assistant Attorney General, for respondent.

LEEDY, P. J.—Defendant was charged in the Circuit Court of Greene County with violating Sec. 8401(g), R. S. '39 and Mo. R. S. A., in having feloniously driven a motor car while in an intoxicated condition. The jury found him guilty, and assessed his punishment at six months in jail and a fine of $100.00. After an unavailing motion for a new trial, he was sentenced in accordance with

the verdict. He appealed, but has filed no brief in this court. Jurisdiction of the appeal is in this court because the offense is a felony under Sec. 8404(c) R. S. '39 and Mo. R. S. A.

Defendant was arrested ·in a car parked in a driveway at or near his home on University Avenue in the City of Springfield. The arrest was made about 4 P. M., following an unsuccessful effort by the arresting officer to "flag down" the defendant because of the erratic course of defendant's car, and the manner in which he was operating it. Summarized, the offending conduct was: "Weaving from one side of the street pretty well over on the other side, not clear against the curbing on the left, but past the center line—weaving back and forth across the center line"; disregard of a stop sign at a boulevard at which he made a "U" turn, "bouncing into a waterway," and back across the boulevard; failure to stop (or, apparently, to even see the policeman) when signalled so to do by the officer standing out in defendant's traffic lane of the street, and waiving both arms as the latter approached.

Asked if defendant had anything in the car with him, the arresting officer replied, "Yes, sir, he had a cat; had a cat in his arms, and he was stroking its head; all slumped over in his car. It was a white cat, had some yellow spots on it." Describing defendant's condition at that time, the officer further testified that defendant "had hair all over him, he had whiskers, they were sticking out pretty much; his eyes were bloodshot; he could not talk. He tried to talk, but just mumbled. . . . I asked him what his name was. I couldn't understand a word he said." He further testified that defendant could not walk unassisted; that he had to·pull his feet around, got him under the arms and pulled him out from under the steering wheel; that he had to hold him up in getting him over to, and in the police car. He was taken directly to police headquarters where, according to a number of witnesses, he was unable to stand unassisted; and it was necessary for two officers to hold him up while he was booked. He was not given the intoxication test because he was "too drunk." Three other police officers, besides the arresting officer, were very positive as to defendant's thoroughly inebriated condition upon arrival at police headquarters.

Defendant denied he was intoxicated at any time while operating his car. The novel aspect of his defense was that while he admitted having drunk some liquor about 3:30 o'clock, its intoxicating effect was sufficiently delayed or slow-motioned as to permit him to drive home in a perfectly sober condition. His admission was that just after leaving his office to go pick up his wife's cat at a small animal hospital, he drank two double shots of Canadian Club whiskey at a bar. And it was his version that, notwithstanding the fact he had reached his office at 6 o'clock that morning, and had had neither breakfast nor lunch that day, he had "just started to feel" the liquor when, 45

1226

minutes after consuming it, he drove the car into his driveway; that he sat in the car three or four minutes before the officer came up, meanwhile he "kept feeling the liquor a little bit, naturally"; that when the second officer arrived, his "head was getting a little dizzy, all right," and by the time he reached police headquarters he was admittedly "feeling pretty rocky."

The first assignment ("that the verdict is against the weight of the testimony") presents nothing for review because too indefinite to conform to the new trial statute, Sec. 4125 R. S. '39, and Mo. R. S. A. See State v. Grove, 204 S. W. 2d 757, (decided at our last conference, and not yet reported) and cases therein cited. Moreover, it could not be sustained if the assignment were reviewable.

The Grove case also rules adversely to defendant the identical assignment made in the second ground of the motion for new trial, to-wit, that the "verdict is the result of passion and prejudice and assesses a punishment wholly unjustifiable under the evidence." There, under comparable facts, defendant was sentenced to nine months in jail, and a fine of $100.00 for the offense of driving while in an intoxicated condition. For the reasons given in the Grove case, the assignment should be, and is, overruled.

The next complaint is that the court erred in setting the cause, and forcing defendant to trial when the cause was not returnable until the May term, and in denying ██ him sufficient time for preparation after the amended information was filed. The justice's transcript was filed January 10, 1946. The information was filed April 6, 1946. On defendant's motion that information was quashed April 27, and on the same date an amended information was filed, by leave, which was in all respects a duplicate of the original information except the year "1945" was substituted for 1946 as the date on which the offense was alleged to have been committed. On May 3, 1946, defendant entered a plea of not guilty, and proceeded to trial on the same day. There was no motion for a continuance, nor any suggestion or intimation that he was not ready for trial. Criminal cases are not returnable to particular terms of court, as civil cases were under our former code, so there can be nothing in that portion of defendant's assignment. The other question is answered by the recent case of State v. Stucker, 352 Mo. 1056, 180 S. W. 2d 719, where it was said: "We know of no decisions holding the accused can complain for want of time for preparation when he did not ask for it. But if it could be regarded as reversible error in any case, no such showing was made here."

The next and final question is whether it was competent for the court to act on the motion for new trial at the time it did. The defendant filed application for a continuance on the motion for new trial, which was based on Sec. 847.96, Mo. R. S. A., and Sec. 96 of the Civil Code, Laws 1943, p. 353. It set up the fact that one of defend-

ant's attorneys was a member of the General Assembly. It is provided that upon the filing of such an application for a continuance under that section, "the court shall continue . . . any and all motions or other proceedings therein, . . . and thereupon no trial or other proceedings of any kind or nature shall be had therein until the adjournment or recess for twenty days or more of the general assembly, nor for ten days thereafter." On July 8, 1946, the General Assembly recessed for a period of 20 days or more; namely, 30 days. The motion for new trial was argued and submitted on July 20, which date was not until more than 10 days after the beginning of the recess. The trial court correctly interpreted the statute to mean that it could proceed after the lapse of 10 days from the beginning of a recess of 20 days or more. Such is the plain language, and, we think, the intent of the statute.

The record proper has been examined and found to be sufficient. The judgment is affirmed. All concur.