**STATE of Missouri, Plaintiff-Respondent,**

v.

**Ivan A. CHESTER, Defendant-Appellant.**

**No. 8874.**

Springfield Court of Appeals.

Missouri.

Aug. 8, 1969.

Gordon R. Boyer, Lamar, for defendant-appellant.

John R. Miller, Pros. Atty., Lamar, for plaintiff-respondent.

STONE, Judge.

Defendant Ivan A. Chester appeals from the judgment and sentence entered upon the jury verdict which found him guilty of the misdemeanor of driving a motor vehicle while in an intoxicated condition [V.A.M.S. § 564.440, as amended Laws 1963, p. 686], and assessed the minimum punishment, to wit, a fine of $100.

 Defendant's principal point on this appeal is that "the court erred in refusing to direct a verdict of not guilty at the close of the state's case or at the close of all evidence . . . ." Motions for directed verdict in criminal cases were abolished and motions for judgment of acquittal substituted in their place by the express provisions of V.A.M.R. Rule 26.10; but, in "the just determination" of the cause [V.A.M.R. Rule 36.02], we will treat instant defendant's motions as motions for judgment of acquittal and the point in his appellate brief as amended accordingly. However, by testifying in his own behalf he waived any claim of error in overruling his motion at the close of the state's case [State v. Hill, Mo., 438 S.W.2d 244, 247 (5); State v. McDaniel, Mo., 392 S.W.2d 310, 314(2)] and submissibility must be determined upon the entire evidence. State v. Sykes, Mo., 372 S.W.2d 24, 25(2); State v. Davis, Mo., 365 S.W.2d 577, 579(3).

Monday, June 12, 1967, was an unpleasant, disagreeable day for defendant, then 56 years of age, who resided in Joplin, Missouri, and was employed by the Missouri Public Service Commission as an engineer engaged in making original cost studies and appraisals of public utility properties for rate making purposes. He and his wife had "a family argument or quarrel that morning" and he waited for "a call from one of my men on one of the jobs . . . so it was noon or after when I left my residence in Joplin." On his way out of town, he stopped at a cleaning establishment and thereafter at a drug store at 7th and Range Line where he bought a pint of whiskey—a "not unusual" purchase when he departed "on a working day trip." Then he "started on up the highway headed for Parkville, Missouri, which is north of Kansas City." Traveling north on U.S. Highway 71 in his 1966 Oldsmobile sedan, he had reached a point about ten miles north of Lamar and two miles south of the Barton County-Vernon County line, and thus, as we judicially know, had driven approximately fifty miles from Joplin [State v. Martin, 349 Mo. 639, 643, 162 S.W.2d 847, 849(1); State v. Enochs, 339 Mo. 953, 956, 98 S.W.2d 685, 686(1); State v. Garrett, Mo., 416 S.W.2d 116, 118 (1), 119], when he had a one-car accident "about 2 [P.M.], a little before."

Defendant's testimonial account was that "a red [southbound] convertible came around this curve, around another car, and I had to go to the [east gravel] shoulder to keep from having a head-on collision"; that this shoulder was "a bit damp and my car started fishtailing and going back and forth" and just north of an intersecting county road the Oldsmobile "kicked clear around and I just shot right across the highway and hit the [west] ditch, which threw me clear over into the right side of the car and . . . practically all under the dashboard"; and that this "jolted me to the point that I don't know how long I was there before I extricated myself. . . ." "When I got myself up from under the dashboard . . . I took this bottle of whiskey and took a great big slug of it . . . a big gulp, and I did that two or three times before I kinda figured out where I was and what I was doing." While

defendant was sitting in the Oldsmobile "with that bottle of whiskey laying in the seat right beside" him, a southbound motorist stopped, "came back to see if he could be of any help," and noticing the bottle on the seat admonished defendant "you better get rid of that, if the trooper comes along here he will really pick at you for having an open bottle there beside you." Heeding the counsel of this unidentified Good Samaritan, "I gave [the bottle] to [him] . . . and he put it in his pocket and walked on back to his car." In "a matter of minutes, ten minutes maybe fifteen," Trooper Marvin Dalton of the Missouri State Highway Patrol stopped at the scene of accident. When asked upon trial whether he had made any statement to Dalton about the accident, defendant replied "I did not make no statement." He insisted that he was not intoxicated "in any degree" at the time of accident but admitted that the whiskey allegedly gulped thereafter had "an effect" on him by the time he and Dalton arrived at the Barton County jail in Lamar. His brief concedes "there was evidence that the defendant was intoxicated at the Barton County jail.

Trooper Dalton, called as a state's witness, testified that, after defendant was advised of his constitutional rights, he first "told me he wasn't telling me nothing" but that, while Dalton was "writing up in my book the accident information," defendant volunteered "I want to tell you what happened" and then made the statement, "there was a son of a bitch stopped in front of me, being slightly inebriated I swerved to miss that car." According to Dalton, defendant further "said that he and Mary, his wife, had a fuss that morning and he kept calling me 'sonny boy,' and he wanted me to give him the test, he thought it would be very interesting." The trooper declared that defendant's face "was flushed," his eyes "were bloodshot," and his speech "was slurred"; that his clothes "were muffed [sic] and there was a wet spot on the lower part of them where he relieved himself";

that he was "very talkative and cocky and insulting" and used much profanity; and that in walking "he staggered very much." Dalton expressed the definite opinion that defendant "was intoxicated." While at the scene of accident, Dalton "paced the skid marks" made by defendant's automobile, explaining that each pace was approximately three feet. He found that "it skidded thirteen paces [on the east shoulder of Highway 71] before it got to the [intersecting county] road and then it went another eighty-nine paces along the [east] shoulder . . . there were four skid marks there and they broke and went into two skid marks for forty-six paces and then the car went west across the highway twenty-seven paces and then out into a field on the west side of the highway sixty-seven paces" coming to a stop "partially on the [west] shoulder and [partially in] the field."

Trooper Jerry McCoy of the Highway Patrol, an approved Type III examiner, administered a breathalyzer test to defendant at the Barton County jail about 3:10 P.M. and, without objection or motion to strike, stated that such "test showed .24% blood alcohol." V.A.M.S. §§ 564.441, 564.442; Laws 1965, p. 670. And Sheriff Calvin Dockery of Barton County testified concerning defendant's action and conduct in the jail that afternoon (e. g., that defendant was "very belligerent," staggered around the room, could hardly sit on a stool while undertaking to dial a telephone, and was "very abusive" to operators attempting to complete long distance calls for him) and expressed the opinion that he was "pretty well intoxicated."

▉ As defendant points out, the burden rested upon the state to adduce substantial evidence of every constituent element of the charged offense of driving a motor vehicle while in an intoxicated condition [State v. Osborne, Mo.App., 413 S.W.2d 571, 573(4); State v. Roseberry, Mo.App., 283 S.W.2d 652, 656(3)], name-

ly, (1) that defendant operated a motor vehicle and (2) that he was in an intoxicated condition while so doing. State v. Kissinger, 343 Mo. 781, 783–784, 123 S.W. 2d 81, 82(1); State v. Campbell, Mo., 292 S.W.2d 297, 299. Since defendant admitted having driven his automobile from Joplin to the point of accident, only the second element was in controversy. In determining the sufficiency of the evidence on this contested issue to support the verdict of guilty, we must consider as true all substantial evidence favorable to the verdict, together with favorable inferences that may be reasonably drawn therefrom, and must reject evidence unfavorable to the verdict. State v. Sykes, Mo., 436 S.W.2d 32, 34 (2); State v. Webb, Mo., 423 S.W.2d 795, 799(6). The credibility of the witnesses and the weight to be accorded to their testimony were for the jury [State v. Dowe, Mo., 432 S.W.2d 272, 274(2); State v. Williams, Mo., 376 S.W.2d 133, 136 (10)] and are not within the purview of our appellate review. State v. Small, Mo., 423 S.W.2d 750, 751(2); State v. Hampton, Mo. (banc), 275 S.W.2d 356, 359(4).

The triers of the facts were privileged to accept the testimony of Trooper Dalton, including his declaration that, in telling him what had happened, defendant had explained, "there was a son of a bitch stopped in front of me, being slightly inebriated I swerved to miss that car." Defendant endeavors to depreciate the significance of this admission that he was "slightly inebriated" by emphasizing selected dictionary definitions of "slight" while ignoring the denotation of "inebriated." Webster's Third New International Dictionary, p. 1156, defines "inebriated" as "exhilarated or confused by or as if by alcohol" and directs the zetetic "see drunk," where, following definitions of "drunk," the lexicographer records [p. 656] the connotations of several synonyms, including the following: "INEBRIATED and the less common INEBRIATE suggest more noisy, hilarious, or roistering indulgence . . . ." In a similar review of the connotations of

the same synonyms of "drunk," it is said in Webster's New International Dictionary (2nd Ed.), p. 792, that "INEBRIATED, in common parlance, is chiefly euphemistic," i. e., the "substitution of an agreeable or nonoffensive word . . . for one that is harsh, indelicate, or otherwise unpleasant . . . ." Id., p. 881.

However, the question under consideration is not one of semantics. The statute [V.A.M.S. § 564.440, as amended Laws 1963, p. 686] does not specify a degree of intoxication necessary to constitute a violation, and "[a]ny intoxication that in any manner impairs the ability of a person to operate an automobile is sufficient to sustain a conviction . . . " thereunder. State v. Raines, 333 Mo. 538, 543, 62 S.W. 2d 727, 729(9); State v. Campbell, Mo., 292 S.W.2d 297, 299. See McIntyre v. David, Mo., 431 S.W.2d 216, 220. Numerous reported cases demonstrate that the fact of defendant's intoxication may be shown by evidence of his conduct and behavior [State v. Griffin, 320 Mo. 288, 294, 6 S.W.2d 866, 868(2); State v. Spurlock, Mo., 312 S.W. 2d 843; State v. Campbell, supra, 292 S.W. 2d at 298–299; State v. Johnson, Mo., 55 S.W.2d 967; State v. Reifsteck, 317 Mo. 268, 295 S.W. 741; State v. Fitzpatrick, Mo., 267 S.W. 905, 906(2)], and the testimony of all witnesses in the instant case (save that of defendant himself) points to the fact of his intoxication.

■ We have accorded due consideration to defendant's theory of the case "that there was evidence that the defendant was intoxicated at the Barton County jail" but none that he operated a motor vehicle on the highway while in an intoxicated condition. True, no witness saw the accident or observed defendant *immediately* thereafter. But defendant fixed the time of accident as "about 2 [P.M.], a little before" and said that, within "a matter of minutes, ten minutes maybe fifteen" after the unidentified Good Samaritan allegedly had departed with defendant's bottle, Trooper Dalton arrived. And after Dalton's investigation at

the scene of accident, his recordation of data and his conversation with defendant, and after his subsequent ten-mile drive with defendant to the Barton County jail at Lamar, it was only 3:10 P.M. when the breathalyzer test was there administered to defendant. So, the triers of the facts fairly could have found that, within a relatively brief period of time after the accident—still within "a matter of minutes" thereafter, Trooper Dalton talked with defendant, observed his action and conduct, and had an opportunity to reach an informed opinion (upon trial stated and received without objection) that he then "was intoxicated." Those entrusted and charged with the responsibility of resolving the factual issues were not required to embrace defendant's self-serving and uncorroborated assertion that he was altogether sober at the time of accident; but, as in other instances where somewhat similar defenses have been rejected [cf. State v. Raines, supra, 333 Mo. at 540, 62 S.W.2d at 728; State v. Grove, Mo., 204 S.W.2d 757, 759; State v. Bryant, 356 Mo. 1223, 1225–1226, 205 S.W.2d 732, 733], the jurors reasonably could have inferred that at the time of accident defendant was driving while in an intoxicated condition. We conclude that the evidence was sufficient to warrant submission to the jury and to support the verdict and judgment of conviction. State v. Grove, supra, 204 S.W.2d at 759(3), and cases there cited; State v. Becker, Mo. App., 429 S.W.2d 290(6).

■ In reaching this conclusion, the unelaborated statement, essentially meaningless in and of itself, that the breathalyzer test "showed .24% blood alcohol" has been disregarded. State v. Thornton, Mo.App., 441 S.W.2d 738, 741(3, 5). However, the introduction of that evidence neither requires nor justifies setting aside the judgment of conviction. Such action *is not required* because (a) the evidence was received without objection or motion to strike [State v. Fields, Mo., 434 S.W.2d 507, 512–513(1, 2)], (b) the only assignment in defendant's motion for new trial pertaining to the admission of evidence was that "the court erred in admitting incompetent, irrelevant and immaterial evidence offered by the state . . ." which was insufficient to preserve anything for appellate review [V.A.M.R. Rule 27.20(a); State v. Kukovich, Mo., 380 S.W.2d 324, 326(5)], and (c) no point directed to the breathalyzer test has been presented or briefed in this court. V.A.M.R. Rule 28.02. And reversal and remand sua sponte, in the exercise of the discretionary power conferred by V.A.M.R. Rule 27.20(c), *is not justified* because (a) the only testimonial reference to the result of the breathalyzer test was the unexplained statement that "the test showed .24% blood alcohol," (b) the only recorded reference to the test by counsel was the similarly unadorned comment in the opening statement that defendant "tested .24% at the time the [breathalyzer] test was given," and (c) most importantly no instruction was sought or given which advised the jury that "[i]f there was fifteen-hundredths of one per cent or more by weight of alcohol in the person's blood, this shall be prima facie evidence that the person was intoxicated at the time the specimen was taken" [V.A.M.S. § 564.442; Laws 1965, p. 670] or which in any wise suggested the significance (if any) of the statement that "the test showed .24% blood alcohol" or otherwise referred to the breathalyzer test or the result thereof. Contrast State v. Thornton, supra, 441 S.W. 2d at 742(6).; State v. Corsiglia, Mo.App., 435 S.W.2d 430, 431.

The only other point advanced by defendant is that the trial court erred in refusing to discharge the jury on defendant's motion because a certain remark by the prosecuting attorney *in his opening statement* "was prejudicial and inflammatory, particularly in view of the weak evidence of a crime." At the close of a brief opening statement, the then prosecuting attorney (his successor in office appears on this appeal), after concisely outlining the facts which the state expected to prove by the witnesses theretofore identified by name,

said "gentlemen, it is the belief of the prosecuting attorney, after talking to the witnesses, the patrolmen and [Sheriff] Calvin Dockery, that this defendant was obviously drunk." In the colloquy between court and counsel following defendant's motion to discharge the jury, the court made it perfectly clear that his denial of that motion rested on his understanding that the quoted statement of the prosecutor's belief was based on the evidence to be presented by the named witnesses.

■ Defendant relies on the established principle that it is improper for a prosecuting attorney to express to the jury in argument his belief of the defendant's guilt in such way that it implies knowledge on his part of facts not in evidence pointing to such guilt. State v. Hart, 292 Mo. 74, 96–97, 237 S.W. 473, 480(18); State v. Lenzner, 338 Mo. 903, 905–906, 92 S.W.2d 895, 896(2, 3); State v. Leonard, Mo., 182 S.W.2d 548, 551(5); State v. Moore, Mo., 428 S.W.2d 563, 565(4). But it is equally well settled that a statement by the prosecuting attorney in argument indicating his opinion that the accused is guilty, where it is apparent that such opinion is based on the evidence in the case, is permissible. State v. Moore, supra, 428 S.W.2d at 565(5, 6); State v. Woods, Mo., 406 S.W.2d 593, 595(3, 4); State v. Duisen, Mo., 403 S.W.2d 574, 578(11); State v. Feltrop, Mo., 343 S.W.2d 36, 39(11).

■ In all of the cited cases, the comments under scrutiny were made in closing arguments; and counsel have cited no case, and none has come to our attention, in which the stated principles have been discussed or applied in ruling a complaint about a prosecutor's remark in an opening statement. We agree with learned counsel for instant defendant that "[t]he opening statement has the office of advising the jury of the facts which the State expects to prove" and that "[a]s a general rule [it] 'should be brief and general, rather than detailed, and should be confined to statements based on facts which can be proved and should not include facts which are plainly inadmissible.' 23A C.J.S. Criminal Law § 1085 [l. c. 97, 99]." State v. Feger, Mo., 340 S.W.2d 716, 724(13). And no doubt the prosecutor's expression of opinion under discussion might better have been left undisclosed in the opening statement. However, we construe it as did the trial court, i. e., as an expression of opinion or belief based on evidence to be presented by the witnesses theretofore identified by name. In any event, the challenged remark is not (so we think) fairly and reasonably susceptible of being construed as implying or intimating knowledge by the prosecutor of facts *not* to be shown in evidence, which is the underlying rationale of the principle upon which defendant here relies. Contrast State v. Lenzer, supra, 338 Mo. at 905, 92 S.W.2d at 896(1).

■ Whether or not the remarks of counsel are improper, and whether or not improper remarks are prejudicial under the facts of the particular case and necessitate a reprimand of counsel or discharge of the jury are matters resting very largely within the trial court's discretion, and an appellate court will not interfere unless the record shows an abuse of such discretion to appellant's prejudice. State v. Green, Mo., 292 S.W.2d 283, 288(10); State v. Posey, 347 Mo. 1088, 1099–1100, 152 S.W.2d 34, 40(5, 6); State v. Fowler, Mo., 189 S.W.2d 549, 550(1); State v. Flinn, Mo., 96 S.W.2d 506, 509(2, 3); State v. White, Mo.App., 313 S.W.2d 47, 52(5). In the case at bar, the prosecutor's factual outline was an accurate statement of what the state's evidence would show, there were no misstatements, the witnesses identified by name in the opening statement were called to the stand, and their testimony fully supported and completely harmonized with the facts preliminarily outlined. See State v. Edmonds, Mo., 347 S.W.2d 158, 164(18). Noting also that the jurors assessed the minimum punishment, to wit, a fine of $100 [V.A.M.S. § 564.440(1), as amended Laws 1963, p. 686], we find no in-

dication that their minds were inflamed against defendant or that he was in any respect prejudiced or harmed by the prosecutor's remark under discussion [cf. State v. Varner, Mo., 329 S.W.2d 623, 627, certiorari denied 365 U.S. 803, 81 S.Ct. 468, 5 L.Ed.2d 460; State v. Harris, 357 Mo. 1119, 1122, 212 S.W.2d 426, 428], and accordingly we are unable to say that the trial court abused his discretion in denying the motion to discharge the jury. This point is ruled against defendant.

The judgment of conviction is affirmed.

HOGAN, P. J., and TITUS, J., concur.