THE STATE v. MILO M. CLOUGH, Appellant.—38 S. W. (2d) 36.

Division Two, April 14, 1931.

*Barton & Moberly,* for appellant.

*Stratton Shartel*, Attorney-General, and *A. B. Lovan*, Assistant Attorney-General, for respondent.

WESTHUES, C.—The grand jury of Laclede County, Missouri, by an indictment, charged the defendant in this case with murder in the first degree, having shot and killed one John Brady on the 24th day of January, 1929. Defendant was tried on this charge in La-

clede County, October 14, 1929. The jury found the defendant guilty of murder in the second degree, and assessed his punishment at ten years in the penitentiary. Motion for new trial was filed, overruled, and defendant sentenced. From this sentence he has appealed.

The defendant, a justice of the peace, lived about one-half mile north of Conway, Laclede County. The deceased lived in Conway. A railroad track and a public road paralleled each other north from Conway and passed near the home of defendant. Defendant usually walked to Conway by way of the railroad track. In the early part of January there was an exchange of real estate between one Mitchell and Goodson, the details of which are immaterial, except that defendant claimed to have earned a commission as agent in making the deal. Deceased claimed part of this commission was due him. A sharp dispute arose between defendant and deceased over this transaction. While this dispute was still fomenting, oil was added to the fire by the filing of a suit before the defendant, as justice of the peace, against deceased by the Bank of Conway for rent and possession of the house then occupied by deceased. The notice or summons in that suit required the deceased to appear on January 24th. According to the evidence, prior to the time the suit was filed, deceased went to the home of the defendant and demanded $100 as his share in the real estate deal. Defendant denied owing deceased anything, which resulted in a heated argument and threats by both defendant and deceased. Thereafter, and prior to the killing, deceased made a number of serious threats against the life of the defendant which were communicated to the defendant. Defendant testified that on one occasion deceased came to defendant's home and demanded of the defendant that he dismiss the suit filed by the bank. Upon refusal to comply with the demand, deceased cursed and threatened to kill the defendant and stated that he would watch the defendant's home for six months, if necessary, to get defendant; that the next day the deceased followed defendant along the railroad track, threatened and cursed him, and defendant was obliged to run home to escape an assault by deceased.

The suit filed by the bank was dismissed and the costs paid by the bank, because the deceased moved from the premises to another place. The only evidence tending to show that deceased knew of this dismissal was that defendant testified he informed the deceased to that effect, and when he did so, the deceased replied as follows: "That does not settle the matter, I will get you and that damned banker yet."

On the fatal day, the morning of the homicide, defendant was walking on the railroad track toward Conway, according to the defendant, to attend a funeral. Several witnesses testified that de-

ceased was in a garage on that morning and made the statement that he was going to see the defendant about some law suit, and if he did not return in a certain time to come and pick up the pieces. Within twenty minutes thereafter the same witnesses heard that deceased had been killed.

Defendant's version of the killing is that he was afraid of the deceased as a result of the threats made by the deceased, both in person and those communicated to him by third parties. He therefore armed himself by placing a revolver in his pocket on the morning of the shooting, for the sole purpose of protecting himself against the threatened assaults of the deceased; that while he was walking on the railroad track toward Conway, he noticed the deceased in the roadway paralleling the railroad track; that deceased crossed over toward the defendant and the railroad track in a rather fast walk or trot, and when the deceased came within a short distance of the defendant he made the statement, "I will get you now, you s——of a b——; you won't get away from me this time;" and that deceased threw two rocks at him. Defendant further testified that he, defendant, told deceased three or four times, "You let me alone," and backed away from the deceased; that the deceased advanced to within six feet of defendant, and then defendant shot to protect his own life.

Other witnesses saw the defendant on the railroad track walking toward Conway, and also saw deceased walking toward the railroad track where defendant was walking. From the view we take of the case it will not be necessary to detail this testimony, as it has no direct bearing on the questions presented. Additional statements of the testimony will be made, if deemed necessary, in the opinion.

Defendant contends that the court erred in not submitting an instruction to the jury on manslaughter. Voluntary manslaughter has been defined as "the intentional killing of a human being in a heat of passion on a reasonable provocation, without malice and without premeditation, and under circumstances which will not render the killing justifiable or excusable homicide." [State v. Sebastian, 215 Mo. l. c. 80, 114 S. W. l. c. 528; State v. Lewis, 248 Mo. 498, 154 S. W. 716.] It has also been said, that to constitute voluntary manslaughter the killing must be "done either in sudden affray or in sudden heat of passion and upon provocation ordinarily calculated to excite the passion beyond control." [Cavanaugh v. Commonwealth, 172 Ky. 799, 190 S. W. 123; State v. Johnson, 6 S. W. (2d) 898; State v. Ballance, 207 Mo. l. c. 617, 106 S. W. 60; State v. Gartrell, 171 Mo. 489, l. c. 516 to 519, 71 S. W. 1045.] The following statement in Wharton on Homicide (3 Ed.), sec. 172, has often been approved by this court: "A provocation is deemed to be adequate, so as to reduce the offense from murder to manslaughter, whenever

it is calculated to excite the passions beyond control. It must be of such a character as would, in the mind of an average just and reasonable man, stir resentment likely to cause violence endangering life, or as would naturally tend to disturb and obscure the reason and lead to action from passion rather than judgment, or to create anger, rage, sudden resentment, or terror rendering the mind incapable of reflection." [State v. Conley, 164 S. W. 1. c. 197; State v. Burrell, 298 Mo. 1. c. 680, 252 S. W. 709; State v. Borders, 199 S. W. 180.]

The authorities are fairly harmonious in holding that in order for a homicide to be reduced from murder to manslaughter, there must be a sudden, unexpected assault, encounter, or provocation tending to excite the passion beyond control. It is not the assault or the provocation alone that reduces the grade of the crime, but it is the sudden happening or occurrence of the provocation as to render the mind incapable of reflection and obscure the reason so that the elements of malice and deliberation necessary to constitute murder are absent, and therefore the crime is not murder but manslaughter. [State v. Stewart, 278 Mo. 1. c. 185, et. seq., also 1. c. 188, and numerous cases cited and reviewed at pages 186 and 187, holding a manslaughter instruction properly refused.]

In the case now before us, there is abundant testimony by disinterested witnesses to the effect that deceased made numerous threats against the life of the defendant. These threats were communicated to defendant. In addition, defendant testified that deceased followed defendant on two occasions within a few days prior to the homicide and threatened to assault him. Defendant testified he armed himself with a deadly weapon for the purpose of protecting himself against the threatened assaults of deceased; that at the time of the shooting deceased advanced toward him, stating, "I will get you now," etc., and threw two rocks at defendant, and when deceased reached a point of about six feet from defendant, defendant shot to protect himself. Ater the shooting, defendant calmly walked by the body of the deceased and telephoned the sheriff that he had killed the deceased. Under this testimony there is no room for manslaughter. The killing of the deceased was not the result of a sudden provocation, calculated to excite the passion of defendant beyond control. If defendant is to be believed, he should be acquitted on the ground of self-defense. If defendant is not to be believed, then he is guilty of murder. The instruction on murder in the second degree was properly given. The court did not err in failing to instruct on manslaughter.

Defendant next complains of Instruction No. 4, given by the court on behalf of the State, as follows:

"The court instructs the jury that although you may believe from the evidence that the deceased John Brady had the reputation of

being a quarrelsome and turbulent man, and that he had, previous to the killing, made threats against defendant Clough, and that these threats had been communicated to Clough, yet these circumstances alone cannot justify, or excuse, or palliate the offense of murder, provided you further believe from the evidence, that at the time of the killing, Brady made no threats against Clough, and made no assault and used no personal violence against Clough, but on the contrary, he, the said Brady, was at the time unarmed and unoffending.''

It is urged that the instruction minimizes the right of self-defense, in that it denied the defendant the right to defend himself and act upon appearances, even though defendant had reasonable cause to believe and did believe that deceased was about to inflict upon him some great personal injury. We think this position well taken. When closely analyzed, the instruction may reasonably be interpreted to mean that the defendant did not have the right to take the life of the deceased, by reason of the previous threats made by the deceased, unless the deceased at the time of the killing made threats and made an assault or used personal violence against the defendant. The court properly instructed on self-defense, but the above instruction is in conflict therewith, and therefore erroneous. It was for the jury to say whether, by the conduct of the deceased at the time of the shooting, defendant had reasonable cause to believe and did believe that deceased was about to assault him and do him great bodily harm, even though deceased actually made no threats or an assault or used any personal violence at the time. The jury might have believed that there was reasonable cause for apprehension at the time of the shooting by reason of the attitude, acts and demeanor of deceased, in the light of the previous experiences between defendant and deceased, absent such threats, assault, or personal violence. The argument by State's counsel in support of this instruction emphasizes the error. The argument is as follows:

''Talk about self-defense! Where is there any testimony that Brady at that time was making an assault on him? The boy says he picked up no rocks and that he threw no rocks. Where is any assault made by Brady? This court tells you that although he may have been a quarrelsome man, although he may have been a turbulent man, although he may have borne that reputation, yet that alone is not sufficient or an excuse to kill him. He must have been making some kind of an assault, he must have been doing him some kind of bodily harm, before he can invoke the self-defense—''

Similar instructions have been condemned by this court, and it has also held that a correct instruction on the subject does not cure the error. [State v. Darling, 202 Mo. 150, l. c. 163, 165; State v. Hollingsworth, 156 Mo. l. c. 187; State v. Jordan, 306 Mo. l. c. 24; State v. Eaton, 75 Mo. l. c. 592; 30 C. J. 368, sec. 619.]

The instruction is also subject to the criticism of selecting certain parts of the evidence by special reference thereto, and calling it to the attention of the jury. [State v. Creed, 252 S. W. 678, 299 Mo. 307; State v. Edelen, 231 S. W. l. c. 589; State v. Mitchell, 129 S. W. l. c. 921, 229 Mo. 683; State v. Raftery, 158 S. W. l. c. 587, 252 Mo. 72.

Other errors assigned, to which we desire to call attention, which may arise again at a retrial, are as follows: It was not error for the court to reject the testimony offered by the defendant in the nature of opinions of witnesses comparing defendant with deceased, as to who would be successful in the personal encounter. That was a question for the jury. Testimony as to the relative strength, size and age, was properly admitted for the consideration of the jury.

The law is well settled as to the method of impeaching witnesses by proof of prior contradictory statements or evidence given at a former trial. This rule applies to the defendant as well as to other witnesses, provided the statements or evidence are voluntarily made, and it must also be remembered that the defendant may not be cross-examined on any subject not referred to in the examination in chief. The proper foundation should always be laid, by asking the witness if he made the statement or gave the evidence in question, to give the witness the opportunity of admitting, denying, or explaining, what was said. [Jones on Evidence (3 Ed.) secs. 844, 845, 846, 849.]

The articles of clothing worn by the deceased at the time of the homicide should not be admitted in evidence. They cannot serve any useful purpose in proving or disproving any fact in this case. [State v. Rennison, 306 Mo. l. c. 483, 484.] The weapon alleged to have been used is admissible.

For the errors indicated, the judgment is reversed and the cause remanded. *Davis* and *Cooley, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is a-dopted as the opinion of the court. All of the judges concur.

## ON MOTION FOR REHEARING.

The learned Attorney-General in his motion for rehearing earnestly insists that this cause should not be reversed and remanded for the reason assigned in the opinion with reference to Instruction No. 4. The only case cited in the Attorney-General's brief in support of this instruction is State v. Ballance, 207 Mo. l. c. 617. In the motion for rehearing additional cases are cited. The instruction seems to have been copied from the case of State v. Harris, 59 Mo. l. c. 553, and approved in that case. A like instruction is also approved in State v. Rider, 95 Mo. 482, 484, and State v. Foran, 255 Mo. l. c. 222. Similar instructions, however, have been condemned by this

court. In State v. Cole, 304 Mo. 105, 263 S. W. 207, the instruction is held erroneous as being an unwarranted comment on the evidence and also that the instruction assumes that the homicide was murder. Numerous cases are cited in the opinion in support of the ruling there made. The court also in that case criticized the cases of State v. Rider, State v. Foran, supra, and State v. Fletcher, 190 S. W. 317. The cases approving the instruction should no longer be followed and are hereby overruled on the point in question for the reasons assigned in this opinion and in State v. Cole, 304 Mo. 1. c. 115, 116, paragraph 2. The motion for rehearing is therefore overruled.

PER CURIAM:—The foregoing opinion by WESTHUES, C., on the motion for a rehearing, is approved by the court. All of the judges concur.