STATE of Missouri, Respondent,

v.

Johnny VELANTI, alias Raymond Jackson,
Appellant.

No. 47646.

Supreme Court of Missouri,

Division No. 1.

Feb. 8, 1960.

William S. Lacy, Kansas City, for appellant.

John M. Dalton, Atty. Gen., James B. Slusher, Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

Defendant, Johnny Velanti, was found guilty of the offense of robbery in the first degree and his punishment was fixed by the jury at imprisonment in the penitentiary for a period of 20 years. See §§ 560.120 and 560.135 (all statutory references are to RSMo 1949, V.A.M.S.). The information charged defendant with two prior felony convictions under the provisions of section 556.280 but the punishment fixed by the jury indicates that it did not find the elements required for the assessment of the punishment under that statute. Defendant has duly appealed but has filed no brief so we will reveiw the assignments properly made in his motion for new trial.

The robbery in this case occurred at the Drake Hotel located at 1016 Locust, Kansas City, Missouri. Sterling M. Ringo was the clerk on duty in the late afternoon of February 9, 1959. He testified that about 5 p. m. a man (this witness and another identified the person committing the robbery as the defendant and for convenience we will hereinafter refer to him in that manner) came up to the desk and said, " 'Don't move. Put your hands in your pocket, and don't say anything, and nobody will get hurt' "; that defendant then had his hand in the right pocket of his coat in such manner as to make it appear that he had a gun in his pocket. The witness stated that about that time someone came to the desk and defendant said, " 'Go ahead and wait on him' "; that after he had gone defendant went behind the counter and took the money out of the money drawer and put it in his left coat pocket. At about that time three other people came in and defendant said to them, " 'I want to see this gentleman in the back room and he will be right back.' " Defendant then had the witness go in the back room and told him to stay there five minutes, and defendant then left. After defendant had gone Mr. Ringo went to the switchboard and called the police. The witness testified that the defendant took approximately $182; that there was one twenty-dollar bill, a number of five and ten-dollar bills, and a lot of one-dollar bills; that he let him have the money because he thought he had a gun in his pocket and he was "in fear." Mr. Ringo stated that the defendant did not have on a mask and was dressed in a light gray suit, a white shirt, and a brown tie with a small figure in it. He positively identified the defendant as the man who took the money.

Mrs. Janet Cress testified that she lived at the Drake Hotel and on the afternoon in question she walked up to the desk and heard the defendant ask Mr. Ringo "if he would come out, he had a little business he wanted to talk to him about," and that Mr. Ringo went into the back with the defendant. The witness described the appearance and clothing worn by the defendant in about the same manner as did Mr. Ringo. She positively identified the defendant as the man who took Mr. Ringo into the back room of the hotel on the occasion in question. She testified that she saw the defendant in a "show-up" at police headquarters on the evening of February 10, and at that time heard him admit that he had robbed the Drake Hotel.

Defendant was arrested in a tavern at 12:03 a. m. on February 10 by police officer Orville Linville. The officer testified that he questioned the defendant because he answered the description of the man who was reported to have robbed the Drake Hotel. When questioned defendant told officer Linville he didn't know how much money he had, but when he opened his wallet he was found to have a large amount of paper money. He was thereupon arrested and taken to the police station. His billfold contained $120, which included one twenty-dollar bill, about two dozen one-dollar bills, and the remainder in five and ten-dollar bills. He also had in his possession a pawn ticket dated February 9.

Police detective Hatfield questioned the defendant on the morning of February 10 shortly after 8 o'clock. He testified that defendant admitted holding up the Drake Hotel and his statement was reduced to

writing and signed by the defendant. Portions of that statement (which was admitted in evidence) are as follows: "About 5 p. m. last night, 2-9-59, it was raining. I was broke and desperate and I went into the Drake Hotel to get out of the rain. I was in the Drake one time previous to this time and I also entered it to get out of the rain. The second time I went in I decided to hold the place up. There was an elderly man behind the counter, I walked up to him with my hand in my pocket as though I had a weapon in my pocket. I told this man to put his hands in his pocket, don't say a word and just stand still. A man came up who wanted to rent a room and I told the clerk to take care of him, which he did. After this man left I went behind the counter and opened a drawer and cleaned out the cash drawer of currency and silver which I put in my left coat pocket. After getting this money I had this desk clerk go into the other office and I told him to stay in there five minutes and no one would get hurt. During this holdup I held my hand in my right coat pocket as though I had a weapon but I did not have a weapon of any kind. After doing this I left the hotel and went to a bar about a block and one-half away from where I called a cab and went to Kansas City, Kansas. I do not know for sure how much money I got in this holdup but it was in the neighborhood of about $200.00."

Defendant told the witness that one of the places where he had been staying shortly before his arrest was the Bramblee Hotel at 1001 Locust, where he was registered under the name of Jacques DeLoix. The officer searched the room at the hotel assigned to Mr. DeLoix and found therein a toy plastic pistol.

We will briefly mention portions of the defendant's testimony. He stated that he came to Kansas City from Louisiana on February 5; that he was an alcoholic and had been drinking almost continuously from the time he arrived in Kansas City until he was arrested; that on Friday, February 6, he registered in the hotel located at 1001 Locust under the name of Jacques DeLoix. He stated, however, that he had met DeLoix in a bar and they had agreed to room together and did occupy the same room until February 9. (There was no testimony except that of the defendant which would indicate that a person actually existed by the name of Jacques DeLoix.) Defendant further stated that on Saturday he saw a friend by the name of Daniels who was living at the Drake Hotel and visited with Daniels at the Drake; that during the week end Jacques agreed to give him the gray suit which he was wearing at the time of his arrest; that between 4:30 and 5 o'clock on the afternoon of the 9th, defendant went to the Drake Hotel to try to locate Daniels; that he entered the small areaway just beyond the front door, at which time he saw Jacques at the desk talking with Mr. Ringo. The witness then described the actions of Jacques in about the same manner as the State's witnesses had described defendant's actions at the time of the robbery —the inference to be drawn from the testimony, of course, being that Jacques was the person who had committed the robbery. He testified that a short time later he met Jacques in a bar and they went to their room where they both changed clothes and defendant put on the suit which Jacques had apparently been wearing and in which defendant was dressed at the time of his arrest. In order to account for the money in his possession at the time of his arrest defendant stated that shortly after leaving his room in the late afternoon of the 9th he accidentally discovered three one-hundred-dollar bills in the lining of some of his clothing. He stated that alcoholics frequently hide their money and he then remembered having hidden this money before he left Louisiana and came to Kansas City.

In regard to the confession admitted in evidence the defendant stated that the signature appeared to be his but that he would neither deny nor admit signing it because he had no recollection of ever reading or seeing or signing that instrument. The inference from his testimony is that he had

been drinking for so many days that, even though he had not had anything to drink for nine hours before the confession was signed, he was still in such a condition from his previous drinking and from "coming off of it" that he had no recollection of what occurred at that time.

■ The first assignment in the motion for new trial is that the verdict of guilty and the assessment of the punishment at 20 years' imprisonment was the result of passion, prejudice and "unfair bias" on the part of the jury. That assignment, in the absence of further specification and demonstration, is too general to preserve any contention of error for review. State v. Hagerman, Mo.Sup., 244 S.W.2d 49; State v. Mayabb, Mo.Sup., 316 S.W.2d 609. The second assignment is that the punishment was excessive and disproportionate to the offense, particularly since there was no proof that defendant used a deadly weapon or violence. The punishment for the instant offense (robbery without use of a deadly weapon) is fixed in section 560.135 at "imprisonment in the penitentiary for not less than five years." Since the jury could have assessed a punishment of life imprisonment it is difficult to see how a punishment of imprisonment for 20 years could be considered excessive. "Fixing the limits of the punishment for crime is a legislative and not a judicial function. State v. Copeland, 335 Mo. 140, 71 S.W.2d 746; State v. McGee, 361 Mo. 309, 234 S.W.2d 587." State v. Nord, Mo.Sup., 286 S.W.2d 775, 776. In the case under review the term of imprisonment specified in the verdict was well within the limits prescribed in the statute and was not excessive or disproportionate.

■ The motion does not question the sufficiency of the evidence to make a submissible case but does contain the following: "The verdict was against the evidence, and against the weight of the evidence. The stories of the two identification witnesses for the State were vague and contradictory as to how the event took place,

and their identification was made on the basis of a necktie, and not on the defendant's general appearance, manner of speech or other physical characteristics peculiar to the defendant." That contention is not supported by the evidence. Both witnesses positively identified the defendant and described his size and manner of dress. When their testimony is considered in connection with the defendant's confession it becomes apparent that there was ample evidence to support the verdict.

■ Instruction No. 4 relating to the subjects of "presumption of innocence" and "reasonable doubt" concluded with the following paragraph: "The court instructs the jury that if they have a reasonable doubt of defendant's guilt, they should acquit, but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching defendant's guilt and not a mere possibility of defendant's innocence." Defendant contends that the court erred in giving that instruction because it "invaded the province of the jury and took away the defendant's right to have his guilt proved beyond a reasonable doubt by the qualifying and unnecessary phrase, 'but such doubt must be a substantial doubt and not a mere possibility of defendant's innocence.'" That contention is not valid. The criticized portion of the instruction has been frequently approved by this court. See State v. Turner, Mo.Sup., 320 S.W.2d 579, and cases cited therein.

There is some indication in the record that prior to the trial the defendant had expressed the desire to try his own case. On the day before the trial began he was brought before the court and the matter was discussed. In his motion for new trial defendant complains that at said conference "the court's comments and remarks when this request was presented to him were such that they aroused in defendant's mind the belief that the court would be displeased and prejudiced against him if he attempted to conduct his own defense, and the defendant was thereby coerced into giving his con-

sent to the conduct of his defense by court-appointed counsel." The transcript of that conference does not support said contention. It developed in the discussion that defendant did not want to try his case but wanted to ask the witnesses additional questions after his attorney had concluded his interrogation because "there are a lot of questions that I may want to ask the witnesses that Mr. Lacy is not familiar with." The court explained to the defendant that he could communicate those questions to his attorney and the attorney would propound to the witnesses all such questions that could properly be asked. At the conclusion of the conference the defendant appeared to be satisfied to permit his attorney to represent him in the full conduct of the trial. So far as may be determined from a reading of the record, we are of the opinion that the defendant was represented by his court-appointed counsel in an able and capable manner. The contention under consideration is ruled adversely to defendant.

◼ Defendant also complains of the refusal of the court to permit him to personally make an argument to the jury which would have followed the argument of his counsel. In that connection the transcript discloses the following statement made out of the hearing of the jury: "The court: At the close of the opening argument by counsel for the State, I have been advised by Mr. Lacy that his client, Mr. Velanti, has requested that after Mr. Lacy completes his argument to the jury that he, Mr. Velanti, be permitted to make an address to the jury. This request of the defendant is being denied. Judge James of Criminal Division A has heretofore appointed Mr. Lacy to represent the defendant. Mr. Lacy has tried this case and is a highly competent, able trial lawyer. It is the court's opinion that his argument to the jury would be adequate for the protection of the rights of the defendant * * *." If defendant had insisted upon personally conducting his defense, without being represented by an attorney, he would have had the right (ab-

sent certain exceptions) to have done so. See State v. Warren, Mo.Sup., 321 S.W.2d 705, and Supreme Court Rule 29.01, 42 V.A.M.S. However, since he accepted the services of a court-appointed attorney and permitted him to conduct his defense, defendant had no absolute right to personally address the jury and thus supplement the argument of his counsel. Whether defendant would be permitted to so participate in the trial was a matter within the sound discretion of the trial court. People v. Richardson, 4 N.Y.2d 224, 173 N.Y.S.2d 587; Foster v. State, 148 Tex.Cr.R. 372, 187 S.W.2d 575; People v. Wilson, 46 Cal.App. 2d 218, 115 P.2d 598; State v. Ingram, 316 Mo. 268, 289 S.W. 637. We hold that there was no abuse of discretion in refusing the instant request.

◼ During the direct examination of defendant he admitted one of the prior convictions alleged in the information and then apparently sought to give certain details in explanation of said conviction. The court ruled that he could not do so and he assigns that ruling as error in his motion for new trial. The contention is without merit. The court's ruling was obviously correct as any evidence concerning the details of the case or in explanation or mitigation would have been wholly irrelevant.

◼ In rebuttal police officer Linville was called by the State and testified as follows: "Q. When you arrested this defendant at 12:03 on 2–10–59, did he have a gray suit on at that time? A. Yes, he did.

"Q. Now, would you please tell the court and jury whether you believe he was intoxicated or not that night? A. No, he was not intoxicated.

"Mr. Lacy: Just a moment, your honor. That is a medical fact, this man is not qualified to state whether he was intoxicated or not.

"The Court: Overruled. Your objection was not timely. He has answered the ques-

tion." The motion for new trial contains the following assignment in regard to said ruling: "The court erred in allowing Officer Linville, a witness for the State, to testify, over defendant's objection, that defendant was not 'intoxicated' at the time of arrest, without first qualifying said witness as an expert on determining physical condition." We rule that contention adversely to defendant. Since the objection was not timely, and there was no motion to strike the answer of the witness, the ruling of the trial court is not preserved for review. State v. Cowan, Mo.Sup., 310 S.W.2d 939; State v. Bryant, 361 Mo. 318, 234 S.W.2d 584.

The final assignment in the motion is that, "Evidence became apparent at the trial, and came as a complete surprise to defense counsel, that the testimony of several federal prison employees could definitely place the defendant's whereabouts as being in Kansas City, Kansas, very shortly after the robbery took place. The exact time of the robbery was unknown to the defendant, or his counsel, until the State's case had been concluded. Such newly discovered evidence if proved would make it virtually impossible for the defendant to have committed the crime." That contention is not supported by the transcript. The evidence referred to came solely from the testimony of defendant and hence was known to him prior to the trial. Defendant testified that he went to the Drake Hotel between 4:30 and 5 o'clock on the day in question and saw his roommate, Jacques DeLoix, conducting himself in the manner in which other witnesses said the robbery was perpetrated. He also testified that he ate dinner in Kansas City, Kansas, with four federal prison employees at 5:30 p. m. If defendant had desired the testimony of those witnesses he should have so advised his counsel prior to trial so that their testimony could have been procured. The contention is without merit and is accordingly ruled against defendant.

An examination of that part of the record relating to matters not required to be pre-

served in the motion for new trial discloses no error.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.