STATE of Missouri, Respondent,

v.

Matthew DAVIS, Appellant.

No. 49427.

Supreme Court of Missouri,

Division No. 2.

March 11, 1963.

Jack L. Koehr, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Burton H. Shostak, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

STORCKMAN, Judge.

The defendant was found guilty of murder in the second degree, Section 559.020, RSMo 1959, V.A.M.S., and was sentenced to imprisonment for a term of ten years in accordance with the verdict of the jury. He has appealed but has filed no brief, so the case is before us on the transcript of the record and the brief of the state.

In this situation we review the assignments of error properly preserved in the motion for new trial and the essential parts of the record. S.Ct. Rules 27.20 and 28.02, V.A.M.R.; State v. Weindorf, Mo., 361 S.W.2d 806, 808 [1]. The assignments of error properly preserved are that the court erred in overruling defendant's motion for a judgment of acquittal filed at the close of the entire case; that the court erred in giving two instructions offered by the state and in refusing two offered by the defendant.

In determining the sufficiency of the evidence to sustain the conviction, we consider as true the evidence favorable to the state and the favorable inferences reasonably to be drawn therefrom, and evidence to the contrary is rejected. State v. Reagan, Mo., 328 S.W.2d 26, 29 [5].

At about midnight on September 23, 1961, the defendant killed his wife by shooting her with a 4/10 shotgun in front of their home at 1400½ Glasgow in the City of St. Louis. When arrested that night the defendant admitted the shooting. The next day he was further interrogated by the circuit attorney and signed a written statement

which was introduced in evidence. The defendant also testified at his trial.

On the night in question the defendant's wife gave him money with which to buy three quarts of beer and he left home to go to a liquor store at about 8:30 or 9 p. m. At the store he met friends with whom he talked until about 11 o'clock during which time the defendant and his friends consumed a couple of half pints of vodka. The defendant then made his purchase, went outside, set the package on the sidewalk, and talked further for about a half hour. When he picked up the paper bag containing the bottles, one of them fell through and broke. He took the other two bottles home and told his wife about the broken one. She called him a liar, cursed him, and an argument ensued. The wife not believing his story decided to go to the liquor store to see the place where the bottle was broken. She went to their automobile, a 1956 Ford, which was parked in front of their house on the east side of the street facing north. She got into the car on the driver's side and the defendant undertook to enter on the passenger's side, thereupon the wife took a butcher knife from her purse and shoved the defendant out of the car. The defendant testified that she threatened to kill him. He left the car and walked towards the house and the wife, according to the defendant's statement, walked as far as the front steps with him at which place she held the knife at his back.

The wife stayed outside but the defendant went into the house, got his 4/10 shotgun and three shells, two of which he placed in his pocket and the other he loaded into the weapon. When he returned to the car his wife was seated on the driver's side and he went to the other side and told her he was going to shoot her. The wife got out of the automobile and ran to the front of it where the defendant met her and fired a shot that struck the wife in the right groin. The wife fell to the street and as she attempted to rise the defendant reloaded the shotgun in order to shoot her

a second time, but she again collapsed. During this time the wife screamed for help and her neighbor, Eveline Sharp, who resided at 1402 Glasgow, called to her and heard the defendant say that he had shot his wife. However, Mrs. Sharp did not go to the wife's assistance because she was afraid to go out because the defendant had a gun. The defendant left his wounded wife in the street calling for help and went into the house. Police officers arrived shortly and found the deceased lying on the sidewalk bleeding. She died from hemorrhage caused by the gunshot wound. The police officers went into the house where they found the defendant and arrested him. They took the shotgun and the two remaining shells. They found on the street a butcher knife about 9½ inches long.

The defendant testified that although his wife threatened him with the knife she did not make any swipes at him at any time; that at the time the shot was fired she had her hand on the gun barrel and "jerked the gun toward" him; and that his wife got to her feet before she collapsed the second time. The firearm used was a single-shot, breech-loading shotgun. The hammer had to be cocked and the trigger pulled before the gun would fire. The defendant admitted that he had pulled the trigger when the shot was fired which fatally wounded his wife.

■ The defendant charges that the court erred in overruling his motion for acquittal made at the close of the state's case and again at the close of all of the evidence. Where the defendant offers evidence and testifies in his own behalf, the error, if any, in overruling his motion for judgment of acquittal entered at the close of the state's case is waived, and the submissibility of the case must be considered upon the entire evidence. State v. Vincent, Mo., 321 S.W.2d 439, 440 [2].

■ Murder in the second degree is the killing of a human being willfully, premeditatedly, and with malice aforethought, but

without deliberation. Section 559.010 and section 559.020, RSMo 1959, V.A.M.S.; State v. Strong, Mo., 339 S.W.2d 759, 764 [4]. The evidence showed that after Mrs. Davis had threatened the defendant he went into the house, got his shotgun, loaded one of the three shells into the gun and cocked it. He then went outside with the loaded gun and found his wife seated in the driver's seat of the automobile. He went to the passenger's side and told her he was going to shoot her. She jumped out, ran towards the front of the car where he met her, pointed the gun at her and pulled the trigger. The evidence shows that the defendant had ample opportunity to withdraw from the affray. When considered in the light most favorable to the state, the evidence is clearly sufficient to support a finding of every essential element of murder in the second degree. State v. Strong, Mo., 339 S.W.2d 759, 765 [5]; State v. Vincent, Mo., 321 S.W.2d 439, 442 [7]; State v. Tourville, Mo., 295 S.W.2d 1, 5 [8]; State v. Finn, 326 Mo. 662, 243 S.W.2d 67, 70 [2].

■ The defendant further contends that the evidence established that the shooting was accidental or in self-defense. The jurors were entitled to believe or disbelieve and reject those parts of the defendant's statements and testimony which tended to exculpate him just as they were privileged to weigh and determine the credibility of all other evidence in the case. State v. Tourville, Mo., 295 S.W.2d 1, 5 [4]. The evidence did not establish as a matter of law that the shot was fired accidentally or that the defendant was acting in self-defense. The court did not err in denying the motion for a judgment of acquittal at the close of the entire case. The issues of accident and self-defense were submitted to the jury under instructions which are unquestioned.

■ Instruction 2 submitted murder in the second decree and on three occasions used the term "feloniously, willfully, premeditatedly, and with malice aforethought". The defendant asserts that the instruction is erroneous in that it failed to define the technical legal meaning of "feloniously" in terms which would be understood by a layman. Generally, the use of the word "feloniously" in an instruction without explanation of its meaning is not prejudicial since it is merely descriptive of the grade of the offense. State v. Scott, 109 Mo. 226, 19 S.W. 89, 90; State v. Weber, 156 Mo. 249, 56 S.W. 729, 731; State v. Harris, Mo., 313 S.W.2d 664, 669 [4]. Second degree murder is a felony. In the circumstances of this case it is not possible that the defendant was prejudiced by the use of the word.

■ That part of instruction 5 which deals with the presumption of innocence and reasonable doubt concluded with this direction: "If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit, but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching the defendant's guilt and not a mere possibility of defendant's innocence." The defendant contends that the instruction is erroneous because it creates an inference that something more than a reasonable doubt is necessary for an acquittal and fails to define the term "substantial doubt". It is clear from the context that "substantial" is used in the sense of "Not seeming or imaginary; not illusive; real; true". Webster's New International Dictionary, Second Edition. The use of the word without further definition did not render the instruction erroneous. State v. Burnett, 365 Mo. 1060, 293 S.W.2d 335, 343 [14]. Any attempt to make the meaning of the term plainer would probably have the opposite effect.

Furthermore the instruction does not create an inference that something more than reasonable doubt is necessary for acquittal and it does not take away defendant's right to have his guilt proved beyond a reasonable doubt. State v. Sanders, Mo., 358 S.W.2d 45, 48 [4]; State v. Velanti, Mo., 331 S.W.2d 542, 545 [4]; State v. Hutsel, 357 Mo. 386, 208 S.W.2d 227, 232 [12]. The Hutsel case gives a brief résumé of the

decisions of this court holding instructions of this kind to be correct declarations of the law. For other cases so holding, see Mo. Digest, Criminal Law, Key Nos. 789(7) and 789(16). The assignment of error is denied.

■ The defendant assigns error in the refusal of the court to give instruction B offered by him reading as follows: "The jury are instructed that they will take into consideration the evidence as to the quarrelsome, turbulent and dangerous character of deceased, and give it such weight as you deem it entitled to. You may consider such evidence for the purpose of throwing light upon the conduct and demeanor of deceased during the difficulty between her and the defendant, and also for the purpose of throwing light upon the defendant's apprehensions, if any, at the time of the shooting." In response to a question on direct examination whether he had any reason to fire at his wife the defendant testified that about 1956 she stabbed him in the back, as a result of which he was in serious condition and hospitalized for about three weeks; that about two weeks after he returned to work she tried to stab him again with a butcher knife. This evidence falls in the category of previous hostile acts or conduct on the part of the person killed or assaulted rather than evidence of such person's general character or reputation for turbulence. It does not bear on the issue of accidental homicide. State v. Woods, 274 Mo. 610, 204 S.W. 21, 23 [3]. It could only have been admissible on the issue of self-defense. State v. Laspy, Mo., 298 S.W.2d 357, 360 [6]; State v. Wilson, 250 Mo. 323, 157 S.W. 313, 315 [4].

The court gave an instruction on self-defense which advised the jury that if the defendant at the time he shot his wife "had reasonable cause to believe and did believe" that she was about to take his life or do him some great bodily harm and if it further found "from the evidence that he had reasonable cause to believe and did believe that it was necessary for him to shoot" her in order to protect himself then he ought to be acquitted on the ground of self-defense. The instruction further told the jury that the questions presented must be determined "from all of the evidence in the case". The self-defense instruction permitted the jury to consider the evidence of the previous attacks in connection with the only issue on which it was material.

■ There was no evidence in the case of the victim's *general* reputation or character for turbulence. In a prosecution for homicide, proof of the general character and reputation of the person killed for turbulence and violence cannot be made by evidence of specific acts. State v. Allen, 290 Mo. 258, 234 S.W. 837, 843 [4]; State v. Colvin, 226 Mo. 446, 126 S.W. 448, 461 [19]; State v. Green, 229 Mo. 642, 129 S.W. 700, 703–704 [7]. The specific acts about which the defendant testified did not justify the assumption in the instruction that there was evidence that Mrs. Davis was generally quarrelsome, turbulent and dangerous; and in the circumstances of this case the kind of instruction offered would have been an unwarranted comment on the evidence. State v. Clough, 327 Mo. 700, 38 S.W.2d 36, 39 [4], 40 [10]; State v. Rozell, Mo., 225 S.W. 931, 934 [7]. The court did not err in refusing instruction B or in failing to give another instruction dealing with the subject matter.

The defendant also offered instruction A which authorized the jury under the facts hypothesized to find the defendant guilty of manslaughter. Section 559.070, RSMo 1959, V.A.M.S. The defendant contends that the court erred in refusing to give this or another suitable instruction submitting the offense of manslaughter. The defendant says an identical instruction was given in State v. Foster, Mo., 338 S.W.2d 892, but the instruction is not set out in the reported case and its correctness does not seem to have been determined. The Foster case does hold, however, that homicide is a graded offense but that manslaughter is a distinct offense, not a degree of murder. 338 S.W.2d 892, 896 [5].

**582**

■■■■■■■■■■■■■■■■■■■■■■■■

 In order to justify reducing homicide from murder to manslaughter, there must be a sudden and unexpected assault or provocation tending to excite the defendant's passion beyond control and the defendant must have entered the conflict without intending to commit a felony. State v. Haynes, Mo., 329 S.W.2d 640, 645 [6]; State v. Finn, Mo., 243 S.W.2d 67, 72 [12]; State v. Smith, Mo., 240 S.W.2d 671, 674 [6]; State v. Clough, 327 Mo. 700, 38 S.W. 2d 36, 38 [1, 2]. The facts in the Finn case are remarkably similar on this issue to those in the case at bar. The defendant's own testimony was that he left his wife at the first step, went into the house, got the gun and shells, loaded the gun, and when he returned to the street his wife was in the driver's seat of the automobile. The defendant went to the car door on the passenger's side to shoot his wife and told her he was going to do so. When she got out of the automobile and ran, he met her at the front of the car and fired the shot which caused her death. The evidence does not justify submission of the offense of manslaughter and we need not be concerned with the correctness of the instruction.

· The defendant further urges that the court erred in failing to instruct on manslaughter through culpable negligence. The defendant was either guilty of murder under the state's evidence or was innocent under his own. There was no evidence of negligence on which to base an instruction on manslaughter through culpable negligence. Section 559.070, RSMo 1959, V.A.M.S.; State v. Whipkey, 361 Mo. 1008, 238 S.W. 2d 374, 377 [2]. There was no room in the case for an instruction on manslaughter of any kind.

■■■■ The final specifications in the defendant's motion for new trial are that the verdict of the jury was against the weight of the evidence and against the substantial evidence in the case. These are so general that they present nothing for appellate review. S.Ct. Rule 27.20, V.A.M.R.; State v.

Howard, Mo., 360 S.W.2d 718, 721 [2]; State v. Tourville, Mo., 295 S.W.2d 1, 4 [1].

We have considered all of the specifications of error properly preserved in the motion for new trial and find them to be without merit. We have also examined the parts of the record and entries designated in S.Ct. Rules 28.02 and 28.08 and find them to be in proper form and free from error. Accordingly the judgment is affirmed.

All of the Judges concur.