STATE of Missouri, Respondent,

v.

Fred SYKES, Jr., Appellant.

No. 49704.

Supreme Court of Missouri,

Division No. 2.

Nov. 11, 1963.

Jack L. Koehr, St. Louis, for appellant.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Burton H. Shostak, Sp. Asst. Atty. Gen., St. Louis, for respondent.

STORCKMAN, Presiding Judge.

The defendant has appealed from a conviction of murder in the first degree. The sentence assessed by the jury was life imprisonment. No brief has been filed by the defendant and the case is before us on the transcript of the record and the state's brief.

■ In this situation our review extends to the assignments of error properly preserved in the motion for new trial and to the essential portions of the record. S.Ct. Rules 27.20 and 28.02, V.A.M.R.; State v. Slicker, Mo., 342 S.W.2d 946, 947 [1]. The defendant's first contention is that the trial court erred in overruling defendant's motions for judgment of acquittal offered at the close of the state's case and again at the close of the entire case. When the defendant as here offers evidence and testifies in his own behalf, the defendant's right to claim error in the overruling of his motion for acquittal at the close of the state's case is waived, and the submissibility of the case must be considered upon the entire

evidence. State v. Davis, Mo., 365 S.W.2d 577, 579 [3].

Around noontime on January 3, 1962, Walter Chappel, a 76-year-old colored man came out of a drug store on the southeast corner of Jefferson and Franklin in the City of St. Louis, crossed Franklin at the intersection and walked northwardly on the east side of Jefferson. The old Jefferson Bank building was on the northeast corner and behind it a parking lot. When Mr. Chappel was in the vicinity of the rear of the building and the parking lot, he was accosted from behind by the defendant. A scuffle ensued during which Mr. Chappel fell to the sidewalk after being struck by the defendant. The defendant then raised Mr. Chappel from the sidewalk to his feet and again struck him. When knocked down the second time, Mr. Chappel's head struck an iron post by the parking lot. The defendant stooped down, put his hand in Mr. Chappel's right trouser pocket and removed some money. The defendant then went north on Jefferson and turned into Cole Avenue leaving the injured Mr. Chappel on the sidewalk.

The incident was witnessed by Willie Paul Bell, Filmore Cozart and James Morton, all of whom testified for the state and identified the defendant as Mr. Chappel's assailant. After the defendant left the scene, another man came along and also took money from Mr. Chappel's pocket but did not hit or strike the injured man. The witness Morton who was making a delivery to the rear of the old Jefferson Bank building remonstrated with the defendant and told him to give back the old man's money. The defendant, however, reached in his pocket in a threatening manner as if to get a knife whereupon witness Morton went into a nearby building and called the police. The witness Bell had known the defendant personally for about two and one-half years and furnished his name to the police officers. Mr. Chappel was taken to a city hospital where he remained in a semi-conscious and irrational condition until January 11, 1962, when he died.

Dr. Glennon Schafer, chief resident surgeon of the city hospital, was in charge of Mr. Chappel and testified that the cause of his death was a cerebral hemorrhage, which was a bleeding within the substance of the brain. A spinal tap taken on the day Mr. Chappel was admitted to the hospital indicated that there was bleeding in his central nervous system. The doctor testified that Mr. Chappel's blood vessels were weakened by disease and that a blow on his head was likely to produce the cerebral hemorrhage which caused his death. Dr. John J. Thomas, pathologist for the coroner of the City of St. Louis, made a post-mortem examination and determined that Mr. Chappel's death was caused by a cerebral hemorrhage. He further testified that any blow to the head might cause the blood vessels to rupture where the person struck was suffering from sclerosis of the brain, and that excitement as well as sudden elevation or diminution of the blood pressure could produce a cerebral hemorrhage and consequent death.

The defendant's father testified that he was ill with the flu on January 3, 1962, and that he gave his Social Security check to the defendant that morning with instructions to go downtown and pay rent, utility and other bills; that his son left "close to twelve o'clock" and returned about 3 p. m. with the exact change. Receipted bills were introduced in evidence. The defendant testified that he walked downtown, that he went by the northeast corner of Jefferson and Franklin, saw an old man on the sidewalk and tried to lift and rest him against the fence around the parking lot. He denied, however, that he struck the old man or took any of his money.

■ In determining the sufficiency of the evidence to sustain the conviction, the appellate court must consider as true the evidence favorable to the state and favorable inferences that can reasonably be drawn therefrom, and evidence to the contrary must be rejected. State v. Davis, Mo., 365

S.W.2d 577, 578 [2]; State v. Reagan, Mo., 328 S.W.2d 26, 29 [5].

■ The evidence was clearly sufficient to prove that Mr. Chappel was assaulted and mortally wounded by the defendant while the defendant was in the act of robbing Mr. Chappel and that the victim died as the result of the wounds inflicted by the defendant. The trial court did not err in refusing to sustain the defendant's motion for judgment of acquittal. State v. Morris, Mo., 307 S.W.2d 667, 673 [6]; State v. Kauffman, 329 Mo. 813, 46 S.W.2d 843, 848 [10]; State v. Hyland, 144 Mo. 302, 46 S.W. 195, 198; State v. Trent, Mo., 278 S.W. 676, 678 [1].

■ Akin to the questions just disposed of is the fifth specification of the motion for new trial which charges that the verdict was against the substantial evidence in that there was no direct evidence to show that the defendant inflicted a mortal wound on Mr. Chappel which caused his death, and the mere possibility that a blow delivered by the defendant could have caused the death was not sufficient. The evidence clearly shows that just prior to his encounter with the defendant Mr. Chappel was conscious and walking north on the east side of Jefferson. After he had been knocked to the sidewalk the second time by the defendant, Mr. Chappel became semi-conscious and irrational and so remained until his death eight days later. Initial examination at the hospital revealed head injuries and a spinal tap disclosed bleeding in the central nervous system indicative of the cerebral hemorrhage which caused his death. The medical testimony was that his injury and death could have been caused by a blow to the head. There was substantial evidence from which the jury could reasonably find that Mr. Chappel's injury and death resulted from blows delivered by the defendant. State v. Morris, Mo., 307 S.W.2d 667, 673 [6]; State v. Brinkley, 354 Mo. 1051, 193 S.W.2d 49, 54 [4]; State v. Frazier, 339 Mo. 966, 98 S.W.2d

707, 712 [5]. The assignment of error is denied.

The third specification of error is that the verdict was the result of passion and prejudice in that the circuit attorney in his opening statement asserted that the victim had just received and cashed his pension check, but failed to offer evidence to substantiate the statement. The transcript shows that the statement made was that "an old man by name of Walter Chappel in his early seventies or early eighties, living on Old Age ·Pension, cashed his pension check about the 1st of the month, * * *." At the beginning of the statement, the circuit attorney had said: "The opportunity is given to us at the beginning of our side of the case to outline for you what we think the State's evidence will show in the case. This is not an argument; it's not for the purpose of giving an argument, but it's for the purpose of giving you an over-all picture of what the case is all about." The evidence did show that Mr. Chappel was 76 years of age, afflicted with arteriosclerosis, and that he had money on his person, but there was no evidence that he was an old-age pensioner who had cashed his pension check about the first of the month.

Absent a showing that a statement of expected proof was not made in good faith, the other party cannot ordinarily complain of a failure to prove the matter stated. State v. Stillman, Mo., 310 S.W.2d 886, 888 [4]; State v. Flinn, Mo., 96 S.W. 2d 506, 509 [2]. Furthermore, the defendant made no objection at the time or during the two-day trial but for the first time in his motion for new trial. Where the trial court is given no opportunity to instruct the jury or correct an alleged error, the after-trial assignment is not looked upon with favor. State v. Brookshire, Mo., 353 S.W. 2d 681, 688 [17]; State v. Leonard, Mo., 182 S.W.2d 548, 550 [2, 3]; State v. King, Mo., 334 S.W.2d 34, 37 [1]. It is inconceivable that the failure to prove that Mr. Chappel was an old-age pensioner who had just cashed his check prejudiced the defendant

in the slightest degree. The contention is denied.

The next assignment of error is that the trial court erred in overruling the defendant's objection when the circuit attorney in identifying the defendant asked the witness Morton, "Is this the man right here that you saw fighting ·on Jefferson Avenue (indicating)?", and the witness answered, "That's right." The defendant's objection after the question had been answered was "I object to that, Your Honor. That's leading the witness." The witness injected the statement that he had not seen the defendant for three or four months, and the court made no ruling. An objection made after the witness has answered is untimely and, in the absence of a motion to strike the answer, the ruling of the cou·t or its failure to rule. is· not preserved for review. State v. Velanti, Mo., 331 S.W.2d 542, 546 [7]. Furthermore, after the jury had retired to deliberate, one of the jurors on behalf of all members requested that the entire testimony of the witness Morton be read to them. This was done with the express approval of both parties. The question was leading, but it is manifest from the testimony of this witness and all the other evidence in the case that the defendant was not prejudiced by this slight departure from the usual method of direct examination.

The defendant's final assignment is that "the verdict of the jury was against the weight of the evidence". It is the function of the jury, not the court, to weigh the evidence and the assignment preserves nothing for appellate review. State v. Davis, Mo., 365 S.W.2d 577, 582 [13]; State v. Howard, Mo., 360 S.W.2d 718, 721 [2]; S.Ct. Rule 27.20(a).

The record reveals that the defendant was effectively represented and received a fair trial. We have considered all of the specifications of error preserved in defendant's motion for new trial and find them to be without merit. The defendant was

present and represented by counsel throughout the trial, including his allocution and sentencing. We have also examined the parts of the record and entries designated in S.Ct. Rules 28.02 and 28.08 and find them to be proper in form and free from error. Accordingly the judgment is affirmed.

All of the Judges concur.