**STATE of Missouri, Respondent,**

v.

**Fred SYKES, Jr., Appellant.**

**No. 49704.**

Supreme Court of Missouri,
Division No. 3.

Jan. 13, 1969.

---

Norman H. Anderson, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

Robert G. Duncan, Lewis E. Pierce, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

THEODORE McMILLIAN, Special Judge.

Appellant, hereinafter referred to as the defendant, was convicted in Circuit Court of the City of St. Louis, Missouri, by a jury, under Section 559.010, RSMo 1959, V.A.M.S., of murder in the first degree. In accordance with the verdict of the jury, he was sentenced to imprisonment in the penitentiary for life. In State v. Sykes, Mo.Sup., 372 S.W.2d 24, we affirmed the conviction. A review of the record proper disclosed that defendant did not have coun- sel when his direct appeal was heard; thus, we have heretofore set aside our judgment of affirmance and ordered the cause to be redocketed, and that counsel be appointed. Counsel has now been appointed, the case briefed and argued, and once again is here for decision.

■ Although defendant's motion for a new trial sets out six assignments of error, all of which were ruled upon in State v. Sykes, supra, he has briefed and argued on this appeal only three grounds. Consequently, pursuant to our Rule 28.02, V.A.M.R. (1959),[1] we shall treat as waived or abandoned all assignments of error not presented and argued in the brief. State v. Jones, Mo.Sup., 386 S.W.2d 111.

We have reviewed and we adopt the finding of facts as set out in the original appeal in State v. Sykes, supra. We, nevertheless, feel that a résumé of the salient facts is in order. Briefly, the State's testimony showed that the deceased, Walter Chappel, age 76, on January 3, 1962, had purchased a paper and some wine from a drugstore in the City of St. Louis. As he left, he was accosted from the rear, and a struggle ensued. In the struggle, defendant, who was identified by several witnesses, struck the victim who fell to the sidewalk. Defendant then raised the deceased from the sidewalk and struck him again; this time the victim's head struck an iron post. Thereafter, the defendant removed a sum of money from the pockets of the deceased, and left him injured on the sidewalk. The deceased, who was then taken to City Hospital, remained in a semi-conscious and irrational condition until January 11, 1962, when he died.

Both the chief resident of the City Hospital and the pathologist for the coroner of the City of St. Louis agreed that the cause of death was a cerebral hemorrhage, which is a bleeding within the substance of the brain. A spinal tap taken on the date of the injury indicated bleeding in the victim's central nervous system. The chief

---

1. All references hereafter are to V.A.M.R. 1959.

resident physician testified that the blood vessels of the deceased were weakened by disease (sclerosis of the brain) and that a blow on the head was likely to produce the cerebral hemorrhage. The pathologist, who performed the autopsy, said "any blow to the head might cause the blood vessels to rupture where the person struck is suffering from sclerosis of the brain, and excitement as well as sudden elevation or diminution of the blood pressure could produce a cerebral hemorrhage."

The evidence indicated further that the deceased prior to his encounter with the defendant was conscious and going about his business; that after he had been knocked down the second time by the defendant, he became semiconscious and irrational and remained so until his death eight days later. Moreover, as we said before, on entry to the hospital, a spinal tap disclosed bleeding into the central nervous system indicative of the cerebral hemorrhage. Also, the physical examination showed a star-fashioned cut and a large bruise on the right side of the victim's head.

■■ Defendant's claim that there was no substantial evidence to show that the deceased died from a mortal wound inflicted upon him by defendant is wholly without merit. First, in determining the sufficiency of the evidence to sustain the conviction, we must consider as true the evidence favorable to the State and favorable inferences which can be reasonably drawn therefrom, and reject evidence to the contrary. State v. Davis, Mo.Sup., 365 S.W.2d 577, 578; State v. Reagan, Mo.Sup., 328 S.W.2d 26, 29(5). A mere recital of the evidence, as digested here without even going into a fuller development, as did the Court on the first appeal, indicates that there was sufficient evidence from which a jury could have reasonably found from the medical testimony that Mr. Chappel's injury and death resulted from the blows delivered by defendant. State v. Morris, Mo.Sup., 307 S.W.2d 667, 673(6); State v. Brinkley, 354 Mo. 1051, 193 S.W.2d 49, 54(4); and State v. Frazier,

339 Mo. 966, 98 S.W.2d 707, 712(5). This assignment is denied.

■ Closely akin to the above contention pertaining to the sufficiency of the evidence to sustain the charge, defendant argues that there was no substantial evidence to show that defendant, in fact, robbed the deceased. This, too, was a jury question. A jury could have reasonably found from the testimony given by three witnesses, that after defendant struck and knocked down the deceased, he removed some money from the pocket of the deceased. State v. Davis, supra.

■ Next, we consider defendant's claim that Count I of the substituted information in lieu of an indictment was totally defective. As we see our duty under Rule 28.02, V.A.M.R., independent of any claim of error by defendant in this regard, we would review the sufficiency of the substituted information. In the instant case, the state substituted an information in two counts for the indictment as found and returned by the Circuit Court Grand Jury. Count II followed the approved practice charging murder in the first degree in the usual language that defendant "did then and there with the specific intent wilfully, feloniously, deliberately, premeditatedly, on purpose and of his malice aforethought" assault and mortally wound Walter Chappel. Of course, under Count II, as has been the practice, the State could prove that the homicide occurred during the course of a robbery even though that fact was not charged in the substituted information. The reason, to be sure, as provided in Section 559.010, RSMo 1959, is that any homicide committed during the perpetration, or the attempt thereof of certain specified felonies, as in the instant case, robbery, the commission of the felony stands in lieu of, and is the legal equivalent of premeditation and deliberation, etc., which otherwise are the necessary attributes of murder in the first degree. State v. Meyers, 99 Mo. 107, 12 S.W. 516; State v. Nasello, 325 Mo. 442, 30 S.W.2d 132; and State v.

Messino, 325 Mo. 743, 30 S.W.2d 750. In any event, however, Count II was dismissed by the State and the case went to the jury under Count I.

■ Count I for our purposes states:

"* * * Fred Sykes, Jr. * * * did unlawfully, wilfully, feloniously, and with malice aforethought, make an assault upon one Walter Chappel [while in the act of committing a robbery upon said Walter Chappel] and did with his hands and fists, strike and beat said Walter Chappel with great force and violence, thereby inflicting a mortal wound, from which the said Walter Chappel did languish; and languishing did live from the 3rd day of January, 1962, til the 11th day of January, 1962, and on the 11th day of January, 1962, the said Walter Chappel of the mortal wound * * * did die. (Brackets added by Court.)

"And so * * * Assistant Circuit Attorney, upon his oath do say that the said Fred Sykes, Jr. * * * the said * * * Walter Chappel in the manner and form and by the means aforesaid, feloniously, wilfully, deliberately, premeditatedly, and of his malice aforethought, did kill and murder * * *"

Granted, as contended by defendant, Count I failed to set out the constitutive requisites of robbery as we classically describe them. And as said by the Court in Titus v. State, 49 N.J.L. 36, 7 A. 621, which we cited with approval in State v. Meyers, supra, "The mistake of the pleader in this instance is the common one of substituting an inference of his own from a set of facts, in the place of showing the existence of such facts. He alleges that the defendant 'did commit a rape,' but does not lay a single fact from which the court can see that such conclusion is well founded. No reason is perceived why, if it be necessary to show a rape as one of the constituents of the offense of murder in the first degree, such crime should not be pleaded with the same formality as is requisite when it forms the sole basis of a count in an indictment." So, here, Count I offends much in the same way; that is, the word "robbery" is used as a conclusion of the pleader. But as we said before, it is unnecessary to charge that murder was committed in the perpetration of another felony. Also, these kinds of statutes (felony-murder rule) do not create a new offense, but merely increase the severity of the punishment. Thus if we examine the indictment in this light and use the rule of thumb suggested by Chief Justice Sherwood in the Meyers case and omit everything between the brackets and treat the phrases pertaining to "robbery" as surplusage, we find that the indictment properly charges the offense of murder in the first degree. State v. Smith, Mo.Sup., 310 S.W.2d 845. Further, such unnecessary allegations do not vitiate the indictment. State v. Foster, 136 Mo. 653, 38 S.W. 721. Therefore, we deny defendant's claim that the substituted information is fatally defective, and we hold that the substituted information does properly state an offense under Section 559.010, RSMo 1959, V.A.M.S.

Finally, defendant complains that the Court committed "plain error" by its failure to instruct the jury on second degree murder, citing State v. Conway, 351 Mo. 126, 171 S.W.2d 677; State v. Aitkens, 352 Mo. 746, 179 S.W.2d 84; State v. Henke, 313 Mo. 615, 285 S.W. 392; State v. Glover, 330 Mo. 709, 50 S.W.2d 1049, 87 A.L.R. 400; and Section 559.020, RSMo 1959, V.A.M.S.

We recognize, as we must, that the jury was instructed on murder in the first degree only. Also, the record shows that defendant made no objections to any of the instructions given. Moreover, no instructions were requested or offered by the defendant, nor were any objections preserved in the motion for new trial. Thus, and rightly so, if defendant is to prevail in the manner now claimed, he must show that the Court committed some "plain error" which affected a substantial right of his

which if not corrected, would result in a manifest injustice.

■ The Conway case, supra, cited first by defendant, does not touch upon the issue now contended by defendant. It merely holds that the facts in evidence to make out a case under the felony-murder doctrine must be such as to permit a jury finding that a homicide was committed during the attempt or perpetration of a felony and that the facts to establish the attempt or perpetration of a felony, as well as the homicide, must be established beyond a reasonable doubt. In the instant case, this was a jury issue in that the defendant was identified as the participant in the robbery and murder. Defendant also cites State v. Aitkens, supra, but this case holds, and we do not disagree, that it is error for the Court to fail to instruct upon a lower degree of any offense, if there is any evidence to warrant a submission of a lesser offense and that the error is not cured simply because a jury found the defendant guilty of a higher degree of the offense. But even so, if we were to find this case within the tenants of the Aitkens case, a complete answer to defendant's contention is that defendant did not offer any evidence which would have required the Court, whether requested or not, as a part of the law of the case, to give an instruction on murder in the second degree. We find that defendant testified (1) that he never struck the deceased at any time, (2) that he never took any money from the person of the deceased, (3) that no one at any time told him to return any money to the deceased, and (4) that he at no time threatened any of the state's witnesses. This testimony was a direct confrontation with and a complete denial of the state's theory of the case. Therefore, under this state of affairs, the defendant either was guilty of murder in the first degree as charged, or was entitled to an acquittal, if his version was believed. Hence, under the circumstances in evidence, it is neither error nor "plain error" not to have instructed the jury on murder in the second degree.

We neither decide nor reach the question of whether or not an instruction on murder in the second degree would ever be proper where the state is proceeding under the felony-murder rule. In State v. Henke, supra, a husband was charged with killing his wife. We held that where there are no facts immediately attending the killing, other than that deceased was killed by the use of a deadly weapon upon a vital part of the body, such a situation calls for an instruction on murder in the first and second degrees. This case is of no help to defendant.

■ Defendant's final claim is that the state's evidence supports a finding of second degree murder. This for the reason that the state's evidence shows an intentional striking of the deceased but not a deliberate killing, citing State v. Glover, supra, wherein the defendant was charged with murder in the perpetration of an arson. There, the victim was a member of the fire department who met his death attempting to put out and bring the fire under control. The defendant's contention in that case was that since he had no intention of injuring or killing anyone or inflicting bodily harm, he could not be held for murder in the first degree. The Glover case, after tracing the history of the felony-murder statute, rejected the claim now being made by defendant that the intention to kill must be shown, citing with approval State v. Wieners, 66 Mo. 13, 22: "If one in perpetrating or attempting to perpetrate a felony, kill a human being, such killing is murder, although not specifically intended, for the law attaches the intent to commit the other felony to the homicide." So here, the intent to rob attaches to the homicide, and since the evidence showed a homicide committed in the perpetration of a robbery, the jury could find only one of two verdicts: viz., conviction of murder in the first degree; or an acquittal. State v. Kauffman, 335 Mo. 611, 73 S.W.2d 217, 220; State v. Hart, 292 Mo. 74, 237 S.W.

473. So too, this contention is without merit.

An examination of the record as required by Supreme Court Rule 28.02, V.A.M.R., discloses no error. Therefore, the judgment is affirmed.

HOLMAN, Acting P. J., and ROGERS, Special Judge, concur.